**Mildred Elizabeth Pearcy AZBILL,
Plaintiff-Appellant,**

v.

**Waldon Luther AZBILL,
Defendant-Appellee.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

Sept. 9, 1983.

Application for Permission to Appeal
Denied Nov. 21, 1983.

---

Henry M. Beaty, Jr., Memphis, for plaintiff-appellant.

Daniel Taylor, Memphis, for defendant-appellee.

CRAWFORD, Judge.

Mildred Elizabeth Pearcy Azbill (hereinafter wife) appeals from an order of the Circuit Court suspending alimony *in futuro* payments awarded to her by final decree of divorce.

The final decree of divorce, entered April 6, 1978, provided among other things that Waldon Luther Azbill (hereinafter husband) must pay $500 per month as alimony *in futuro*. On July 28, 1982, husband filed a

petition to suspend and terminate alimony which alleges wife is living with another man at her residence, husband should not be required to pay alimony while she is living with another man, and wife is now employed and earning a good income constituting a change in circumstances. Wife filed a response to the petition in which she alleges she is not living with another man, there had been no change of circumstances to warrant a suspension or termination of alimony, and the final divorce decree should not be changed.

The trial court found that wife and Gene Bell are living together as contemplated by Tenn.Code Ann. § 36–820(a)(3), and that they are giving and receiving mutual benefits for services and funds of each other. The court reduced the alimony to $200 per month on future alimony payments.

Wife has presented the following issues for review:

1. What is the proper construction of Tenn.Code Ann. § 36–820(a)(3)?

2. Did the Legislature intend Tenn.Code Ann. § 36–820(a)(3) to require a relationship similar to marriage when the words "lives with" are used?

3. Did the Legislature intend that Tenn. Code Ann. § 36–820(a)(3) should be limited to men and women living together or does "a third person" apply to relatives and members of the same sex?

Wife asserts the intent of Tenn.Code Ann. § 36–820(a)(3) requires a relationship similar to marriage by and between the alimony recipient and the third person. We perceive the real issues to be the interpretation and application of Tenn.Code Ann. § 36–820(a)(3) and (4), and whether the evidence preponderates against the finding of the trial court that the alimony should be suspended pursuant thereto.

The witnesses testifying at the hearing were the wife, Mr. Gene Bell, Mr. Martin Klindworth and the husband. The wife testified as follows:

Until a week before the hearing she had resided in the home awarded to her at the time of the divorce at 3199 Dothan, Memphis, Tennessee, which house she has now sold. She has known Mr. Gene Bell since 1978 or 1979, but did not meet Mr. Bell until after the divorce. Mr. Bell did not live with her at the Dothan address, and did not ever spend the night there. He did, however, have a key to the property and watched a lot of television at the house, since he was unable to procure cable television at his trailer home. He came to her house almost every day and stayed there during the day a great deal of the time while she was at work. He has eaten there on occasions and he had free run of the house to come and go as he pleased. On occasions he would remain in the house until late in the evening, possibly after midnight, and watch cable television, although she on many occasions would have gone to bed prior to his departure. Mr. Bell owns a business known as Millie's Hair Fashions and the wife works there as the manager and also as a hairdresser. As manager she keeps the payroll, writes the checks and orders the supplies. She is 54 years of age and suffers from a degenerative arthritic condition. Mr. Bell did assist her in working on her car and doing yard work, but he did not contribute any money for household expenses, nor did she contribute money to him. Mr. Bell did not keep clothes or toilet articles at her home. She liked to play bingo and checks written in April, May and June for $325, $215 and $380 respectively were checks cashed at the bingo place, but all the money was not spent on bingo. Mr. Bell paid the monthly charge for the cable television since he was unable to obtain cable at his home. For that reason he was able to enter and leave her home as he pleased in order to watch it. Mr. Bell had girlfriends and sometimes a girlfriend would pick him up at her house when he wanted to go home. Mr. Bell was retired and did not take an active part in managing the beauty shop. The address listed on his driver's license was her home address on Dothan. Mr. Bell also used the Dothan address as his mailing address. She did not expressly permit such uses of her home address.

Mr. Bell testified that he resides in a trailer park at 1760 Zanola and has never spent the night with Ms. Azbill at 3199 Dothan. He does possess a key, comes and goes as he pleases and spends time at the house every day. Many evenings he stays until 3 or 4 o'clock in the morning watching television. Upon leaving he either drives his truck or drives her car home. Sometimes a girlfriend picks him up. He has become familiar with some of the neighbors. Not only does he use the Dothan address on his driver's license, but he also listed the address on his 1979, 1980 and 1981 tax returns as his home address. He does not have a telephone at the Zanola address, and his past utility bills were very small. He does not contribute to the support of Ms. Azbill, nor does she contribute to his support. He does accomplish odd jobs around her house. Such jobs include yard work, house work such as cleaning and maintenance work on her automobile. He owns Millie's Hair Fashions, and employs Ms. Azbill as a hairdresser paid on commission and also as the manager of the shop. She has access to the cash register and may pay herself in cash for the commissions earned. All of the other hairdressers are paid by check only. He does not keep any clothes or toilet articles at the Dothan address. He dates other women and does not sleep with Ms. Azbill.

Martin Klindworth testified as follows: He is a private investigator employed by Mr. Azbill to investigate the possibility of someone living with Ms. Azbill at her home. He placed the house under surveillance during the months of May, June and July, 1982, and observed that Mr. Bell spent the night there on the days that he had the house under surveillance. When the house was put up for sale, he posed as a prospective buyer and made an appointment to inspect the house. He was shown around the house by Mr. Bell and Ms. Azbill. At such time he noticed men's clothing and toilet articles in the house. On that same evening he watched the house all night and neither Ms. Azbill nor Mr. Bell left the house until the next morning.

Husband testified that he did not leave any clothes in the residence when he left except two pair of coveralls. He had paid $500 per month alimony as required by the order, and he was further allowed to give his opinion as to what constituted living together. No question is raised on appeal regarding this testimony.

The pertinent part of Tenn.Code Ann. § 36–820 (1982 Cum.Supp.) is as follows:

(a)(1) Whether the marriage be dissolved absolutely, or a perpetual or temporary separation be decreed, the court may make an order and decree for the suitable support and maintenance of the complainant by the respondent, or out of his or her property, and of the children, or any of them, by either spouse or out of such spouse's property, according to the nature of the case and the circumstances of the parties, the order or decree to remain in the court's control; and, on application of either party, the court may decree an increase or decrease of such allowance on cause being shown.

(2) Courts having jurisdiction of the subject-matter and of the parties are hereby expressly authorized to provide for the future support of the complainant and of the children, in proper cases, by fixing some definite amount or amounts to be paid in monthly, semimonthly, or weekly installments, or otherwise, as circumstances may warrant, and such awards, if not paid, may be enforced by any appropriate process of the court having jurisdiction thereof, including levy of execution.

(3) In all cases where a person is receiving alimony in futuro and the alimony recipient lives with a third person, a rebuttable presumption is thereby raised that:

(A) The third person is contributing to the support of the alimony recipient and the alimony recipient therefore does not need the amount of support previously awarded, and the court therefore should suspend all or part of the alimony obligation of the former spouse; or

(B) That the third person is receiving support from the alimony recipient and the alimony recipient therefore does not need the amount of alimony previously awarded and the court therefore should suspend all or part of the alimony obligation of the former spouse.

\* \* \* \* \* \*

█ The rule of statutory construction to which all others yield is that the intention of the Legislature must prevail. *City of Humboldt v. Morris,* 579 S.W.2d 860, 863 (Tenn.App.1978); *see Tidwell v. Collins,* 522 S.W.2d 674, 676 (Tenn.1975). Legislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used when read in the context of the entire statute and without any forced or subtle construction to limit the import of the language. *Worrall v. Kroger Company,* 545 S.W.2d 736, 738 (Tenn.1977); *see City of Lenoir v. State ex rel. City of Loudon,* 571 S.W.2d 297, 299 (Tenn.1978).

█ It is the duty of the court to reconcile inconsistent or repugnant provisions of a statute and to construe a statute so that no part will be inoperative, superfluous, void or insignificant. We must give effect to every word, phrase, clause and sentence of the Act in order to achieve the Legislators' intent, and we must construe a statute so that no section will destroy another. *Tidwell v. Collins, supra* at 676–677.

█ Tenn.Code Ann. § 36–820 statutorily established alimony *in futuro* and specifically provides for future control of the decree by the trial court. The 1980 legislative amendment added what is codified as (a)(3)(A) and (B) of the statute. Wife asserts in her brief that the real intent of the Legislature involved preventing a man and woman from living together while the woman continued receiving support from a former husband. We do not find it necessary to determine whether we agree or disagree with the motivation of the Legislature in passing the Act in question. The amendment itself is a part of the statute expressly retaining the decree within the control of the trial court for future modification in the event of changed circumstances. On application of either party the court is authorized to modify the decree and obviously the one applying for relief on the ground of changed circumstances has the burden of proving the changed circumstances. This held true in all cases until the enactment of the 1980 amendment pertaining to an alimony recipient residing with a third person. We do not see any difficulty in the construction of this statute when we give the language used its natural and ordinary meaning, reading the statute as a whole. It is clear that the Legislature merely provided a different method of proof for the situation where the changed circumstance consisted of the alimony recipient living with a third person. In those instances the presumption arises that the alimony previously decreed is not needed and therefore the burden shifts to the alimony recipient to demonstrate that although he or she is residing with a third person, this in no way alleviates the need for the alimony previously awarded. The synonym for live is reside and it is clear that the use made of the word "lives" in the statute could just as easily have been resides. Nowhere does it indicate that there must be any type of liason, sexual or otherwise. The whole question involves the method of proof.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

█ In the case before us, while the wife and Mr. Bell denied that Mr. Bell resided in the home of wife, the record indicates that he was there daily, had a key, came in and out as he pleased, had clothes and toilet articles in the house, and at least on four different occasions spent the entire night in the home. All of this evidence was in the face of the unequivocal testimony of the wife and of Mr. Bell that he did not and had not spent the night at the home and did

not have any clothing or toilet articles there. The trial court observed the manner and demeanor of the witnesses and is in a better position to determine the credibility of those who appeared personally before the court. Any conflict in testimony requiring a determination of the credibility of witnesses is for the trial court and is binding on the appellate court, unless other real evidence compels a contrary conclusion. *State ex rel. Balsinger v. Town of Madisonville,* 222 Tenn. 272, 282, 435 S.W.2d 803, 807 (1968); *Linder v. Little,* 490 S.W.2d 717, 723 (Tenn.App.1972). We find no other real evidence in the case.

Under the record before us we cannot say that the evidence preponderates against the finding of the trial court that the wife and Mr. Bell were living together within the meaning of Tenn.Code Ann. § 36–820(a)(3). Once this finding is made, it is incumbent upon the alimony recipient to then show by the greater weight or preponderance of the evidence that he or she needs the amount of support previously awarded. The record does not indicate that the wife in this instance carried this burden.

In reviewing the record we cannot find that the evidence authorized a $3,000 credit for alimony previously paid, nor for a reduction in the alimony in the amount of $300. On the contrary, the record merely reveals that the wife and Mr. Bell are living together, thus creating the rebuttable presumption that the alimony recipient does not need the amount of support previously awarded. The record does not contain evidence rebutting this presumption and accordingly the entire amount of alimony should be suspended as of the date of the filing of the petition. Accordingly, the order of the trial court is reversed insofar as it allows a credit of $3,000. The order reducing the alimony to $200 per month is modified by suspending the entire amount of $500 from and after July 28, 1982, until such time as a change of circumstances warrants reinstatement in whole or in part.

The case is remanded to the trial court for such other proceedings as necessary and the costs of the appeal are adjudged against the wife.

TOMLIN and HIGHERS, JJ., concur.