# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

REIKO McCULLOUGH,        )
        )
    Plaintiff/Appellee,      )    Davidson Circuit No. 89D-3789
        )
v.        )
        )    Appeal No. 01A01-9701-CV-00039
WHITFORD B. McCULLOUGH,    )
        )
    Defendant/Appellant.    )
        )

**FILED**

December 5, 1997

Cecil W. Crowson

Appellate Court Clerk

APPEAL FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE MURIEL ROBINSON, JUDGE

For the Plaintiff/Appellee:      For the Defendant/Appellant:

Joseph L. Lackey, Jr.        David H. Hornik
Nashville, Tennessee        Nashville, Tennessee

**AFFIRMED AND REMANDED**

HOLLY KIRBY LILLARD, J.

CONCURS:

W. FRANK CRAWFORD, P.J., W.S.

DAVID R. FARMER, J.

**OPINION**

This case involves a petition for the modification of alimony payments. The ex-husband appeals the trial court's denial of his petition to reduce his alimony obligations to his ex-wife. We affirm.

Petitioner/Appellant Whitford B. McCullough ("Husband") and Respondent/Appellee Reiko McCullough ("Wife") were divorced on April 29, 1991. The divorce decree mandated that Husband pay Wife monthly alimony payments of $608.00 for an unspecified period of time. In September 1994, Husband filed a petition to terminate alimony on the grounds of material change of circumstances pursuant to Tennessee Code Annotated § 36-5-101(a)(1)(Supp. 1997). Husband later amended his petition to allege that termination of alimony was warranted on the grounds that Wife was living with a third person who was contributing to her support and maintenance, pursuant to Tennessee Code Annotated § 36-5-101(a)(3).

Husband alleged that Wife was living with Joseph Tuggle ("Tuggle"). It is undisputed that Tuggle is the father of a child conceived by Wife after the divorce. Tuggle has been paying Wife $100.00 per month, and testified that the payments were to support this child.[1]

At trial, Husband contended that Tuggle has been living with Wife and that he has supported her in addition to the child. The proof indicated that Tuggle has spent the night at Wife's residence on various occasions. Tuggle testified that the frequency of his overnight visits range from zero nights per week to four or five nights per week. A report based on six days of surveillance by Husband's private detective, Jonathan Saad ("Saad"), stated that Tuggle spent the night on one occasion during the six-day period.

The proof showed that Tuggle owns his own apartment. Husband claimed that Tuggle never lived there. Saad's report indicated that no vehicles registered to Tuggle were ever parked there during his surveillance. Tuggle admitted that he kept multiple vehicles in Wife's driveway, but testified that these vehicles were all broken and that they are now relocated to his new residence.

The evidence also demonstrates that Tuggle installed a satellite dish in Wife's yard. As of the date of the hearing, Wife had had the satellite dish for a year and a half. Tuggle claimed that he intended to keep it there only temporarily. Tuggle also testified that he bought Wife a 31-inch television and a waterbed. According to Tuggle, the television was a "junk t.v." that he repaired for

---

[1]These payments are not judicially mandated and are voluntarily provided by Tuggle.

her. In addition, Tuggle conceded that he has occasionally helped with household chores and picked Wife up from work. Tuggle testified that, since he moved to a new subdivision in April of 1996, he has not spent the night with Wife.

The trial court denied Husband's petition to terminate his alimony payments. In a cursory opinion, the trial court held that Husband had not carried his burden of proving sufficient grounds to warrant relief. The trial court refused to modify Husband's alimony obligations and awarded Wife attorney's fees. From this decision, Husband now appeals.

On appeal, Husband contends that the trial court erred by ruling that he had not presented sufficient proof to demonstrate that Wife was receiving support from a third person to warrant termination, reduction, or suspension of his alimony obligations. Wife seeks an affirmance of the trial court's holding, as well as an award of attorney's fees for this appeal.

Our review of the findings of fact by the trial court is *de novo* upon the record of the trial court, accompanied by a presumption of correctness of the factual finding unless the preponderance of the evidence is otherwise. Tenn. R. Civ. P. 13(d). Questions of law are *de novo* with no presumption of correctness. ***Carvell v. Bottoms,*** 900 S.W.2d 23, 26 (Tenn. 1995).

Tennessee Code Annotated § 36-5-101 governs the modification of alimony payments. Subsection (a)(3) of this provision states:

> (3) In all cases where a person is receiving alimony in futuro and the alimony recipient lives with a third person, a rebuttable presumption is thereby raised that:
> (A) The third person is contributing to the support of the alimony recipient and the alimony recipient therefore does not need the amount of support previously awarded, and the court therefore should suspend all or part of the alimony obligation of the former spouse; or
> (B) The third person is receiving support from the alimony recipient and the alimony recipient therefore does not need the amount of alimony previously awarded and the court therefore should suspend all or part of the alimony obligation of the former spouse.

Therefore, once it is established that the alimony recipient is living with a third person, this raises a rebuttable presumption that the alimony recipient does not need the amount of support previously awarded.

In order for this rebuttable presumption to arise, the petitioner must first prove that the "alimony recipient lives with a third person." ***Id.; Binkley v. Binkley***, No. 88-148-II, 1988 WL 97231, *2 (Tenn. App. Sept. 23, 1988). Husband claims that the evidence demonstrates that Wife

2

was living with Tuggle. In support of this contention, Husband cites *Azbill v. Azbill,* 661 S.W.2d 682 (Tenn. App. 1983).

In *Azbill,* the ex-husband alleged that the alimony recipient, the ex-wife, had the daily company of a third party, Mr. Bell. Although the parties did not appear to have a romantic relationship, the proof showed that Bell was at the ex-wife's home "daily, had a key, came in and out as he pleased, had clothes and toilet articles in the house, and at least on four different occasions spent the entire night in the home." *Id.* at 686. Nevertheless, both the ex-wife and Bell maintained that Bell had not spent the night at her home and did not keep clothing or toiletry articles there. The trial court found that Bell lived with the ex-wife within the meaning of the statute and reduced the alimony payments. This Court determined that the trial court's finding was based on determinations of credibility. *Id.* at 687. Deferring to the trial court's assessment of the witnesses' credibility, this Court affirmed the trial court's holding that the wife and Bell were living together pursuant to the statute.[2] *Id.*

In *Stanton v. Stanton,* Shelby Law No. 82, 1986 WL 2301, *2 (Tenn. App. Feb. 20, 1986), the trial court found that the third party, McKinney, moved furniture items and personal belongings into the alimony recipient's (ex-wife's) residence. This address was listed for McKinney's voter registration and for his car license. *Id.* McKinney paid the ex-wife $15.00 per day as board; paid for all of the telephone bills (with the exception of the ex-wife's long distance bill), paid the ex-wife $100.00 per month for receiving phone calls, handling filing, and handling mail; and gave the ex-wife a car. *Id.* This Court affirmed the trial court's conclusion that the ex-wife and McKinney were living together pursuant to the statute. *Id.*

In *Williams v. Williams*, No. 85-150-II, 1986 WL 5895, *3 (Tenn. App. May 21, 1986), this Court also affirmed the trial court's finding that the alimony recipient, the ex-wife, was living with a third person. In *Williams*, the ex-wife was spending "at least several nights a week and the weekends" at the third party's residence. *Id.* Furthermore, she conceded having a key to his apartment, keeping some of her clothes and other personal items there, and keeping some of her furniture there. *Id.*

---

[2]     At the time of this case, the statute was cited as Tenn. Code Ann. § 36-820(a)(3).

*Binkley* also involved a situation in which the ex-wife would occasionally stay at the home of a third party. *Binkley,* 1988 WL 97231. In this case, the ex-wife testified she would stay overnight at her friend's home three or four nights per week. *Id.* at *2. Surveillance evidence revealed that during a two week period, the ex-wife's car was at the third party's home all but one day. According to the court, "[i]n common parlance, 'living with' implies the occupancy of a common place of abode." *Id.* at *3. The trial court had stated that it was "not convinced" that the ex-wife was living with the third party, but also found that the ex-wife had rebutted any presumption that the alimony payments were no longer needed. This Court found that the evidence did not preponderate against the trial court's factual findings. *Id.*

Testimony in *Duffin v. Duffin*, No. 02A01-9302-CV-00028, 1993 WL 484204, *1 (Tenn. App. Nov. 23, 1993), indicated that the alimony recipient, the ex-wife, had an "off and on" relationship with a third party, Steve Grimes. The ex-wife stated that Grimes would sometimes spend up to three or four nights in a row at her home. *Id.* Furthermore, the trial court found that Grimes operated a business from the ex-wife's home. *Id.* at *2. The ex-wife and Grimes both testified that he did not have a key to her house and he did not keep clothes there (with the exception of a change of clothes when he would stay overnight). *Id.* at *1. Grimes kept his own apartment and did not provide the ex-wife with any money or pay her bills. *Id.* The ex-wife testified that the relationship ceased five months before the hearing. *Id.*

In *Duffin*, this Court found no evidence to support the trial court's finding that Grimes operated a business from the ex-wife's home. After examining the record as a whole, the Court reversed the trial court's finding that the ex-wife was living with Grimes. *Id.* at *3. Citing *Binkley*, the court held that "[t]he record simply does not contain evidence that Wife and Grimes had 'occupancy of a common place of abode.'" *Id.* (citing *Binkley,* 1988 WL 97231 at *3).

In this case, since the trial court's order denying Husband's petition was cursory, it is unclear whether the trial court found that: (a) Tuggle was not living with Wife, and that Husband had not carried his burden of proving a material change of circumstances sufficient to warrant a reduction in alimony, or (b) even if Tuggle were living with her, Wife had effectively rebutted any presumption that the alimony payments were no longer needed.

The evidence presented by both parties is, for the most part, uncontradictory. The evidence indicates that Tuggle's overnight stays at Wife's home are sporadic, anywhere from zero to five

4

nights in any given week. As in *Duffin*, Tuggle maintained his own residence. The only evidence of Tuggle's personal items that were kept at Wife's home are his junk cars and his satellite dish. The evidence does not indicate that any of the junk cars are registered to Wife's address. There is no evidence that Tuggle kept clothing or toiletries at Wife's home, that he had a key to the home, or that he routinely ate his meals at Wife's home.

Although this is a close case, the facts appear to be akin to those presented in *Duffin* and *Binkley*. As in those cases, the evidence does not preponderate in favor of a finding that Wife and Tuggle have shared the "occupancy of a common place of abode." *Binkley,* 1988 WL 97231 at *3; *Duffin,* 1993 WL 484204 at *3. Therefore, we find that the rebuttable presumption set forth in Tennessee Code Annotated § 35-5-101(a)(3) is inapplicable.

Husband may, nevertheless, be entitled to relief if he can show that Wife's receipt of the $100.00 per month payments by Tuggle constitutes a "substantial and material change of circumstances," so that modification of his alimony obligations is warranted. Tenn. Code Ann. § 35-5-101(a)(1). It has been held that any contributions made to an alimony recipient by a third party "may be taken into consideration in determining whether alimony payments should be adjusted." *Richardson v. Richardson,* 598 S.W.2d 791, 795 (Tenn. App. 1980). The party claiming that a change of circumstances exists carries the burden of proving the existence of the changed circumstances. *Azbill,* 661 S.W.2d at 686. The change of circumstances must be "substantial." *Cranford v. Cranford,* 772 S.W.2d 48, 50 (Tenn. App. 1989); *Jones v. Jones,* 784 S.W.2d 349, 352 (Tenn. App. 1989). Once the petitioner shows that a change exists, the court should weigh the same criteria that were considered in making the initial alimony award. *Cranford,* 772 S.W.2d at 50; *Threadgill v. Threadgill,* 740 S.W.2d 419, 422-23 (Tenn. App. 1987). These factors are enumerated in Tennessee Code Annotated § 36-5-101(d).

In this case, the undisputed testimony was that Wife has a child fathered by Tuggle, and that Tuggle pays Wife $100.00 per month to support the child. The other evidence, such as the evidence that Tuggle gave Wife a television he had repaired and installed a satellite dish at her home, is not sufficient to support a finding that Wife's need for alimony payments has lessened. Therefore, considering the record as a whole, the evidence does not preponderate against the trial court's decision to deny Husband's petition for a reduction in alimony payments.

5

Wife requests attorney's fees incurred during this appeal. It has been held that "where the wife has demonstrated that she is financially unable to procure counsel, and where the husband has the ability to pay, the court may properly order the husband to pay the wife's attorney's fees." *Houghland v. Houghland,* 844 S.W.2d 619, 623 (Tenn. App. 1992). The evidence in this case supports the awarding of attorney's fees to Wife. Consequently, the matter is remanded to the trial court for a determination of the appropriate amount.

The decision of the trial court is affirmed. Wife's request for attorney's fees on appeal is granted, and the matter remanded to the trial court for determination of the amount of attorney's fees on appeal. Costs on appeal are taxed against the Appellant for which execution may issue if necessary.


_____
**HOLLY KIRBY LILLARD, J.**

_____
**CONCUR:**


_____
**W. FRANK CRAWFORD, P. J., W.S.**


_____
**DAVID R. FARMER, J.**