IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 15, 2006 Session

## MARY KAY THOMPSON v. CLAYTON THOMPSON, JR.

**Appeal from the Circuit Court for Williamson County**
**No. 01537     Timothy L. Easter, Judge**

_____

**No. M2005-02762-COA-R3-CV - Filed on March 7, 2007**

_____

This is a post-divorce proceeding wherein Appellee sought to enforce the provisions of a marital dissolution agreement and Appellant sought to modify alimony and child support provisions because of an alleged change of circumstances. The trial court ruled that Appellant was intentionally underemployed and attributed income that was comparable to his income at the time of divorce. Finding that the evidence in the record does not support a finding of willful underemployment, we vacate the judgment of the trial court and remand the case for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Lori Thomas Reid, Phillip R. Newman, Franklin, Tennessee, for the appellant, Clayton Thompson, Jr.

Kenneth J. Sanney, Franklin, Tennessee, for the appellee, Mary Kay Thompson.

## OPINION

### I. FACTUAL BACKGROUND

Clayton Thompson, Jr. (Appellant) and Mary Kay Thompson (Appellee) were married April 12, 1975. The marriage produced two children, one of whom is still a minor. Appellant is an employee of the General Motors (GM) division of Saturn, and has worked for GM for thirty-five years. At the time of the divorce in 2003, Appellant was earning an annual income of $124,000. On November 17, 2003, in a Final Decree of Divorce, Appellee was granted an absolute divorce pursuant to Tennessee Code Annotated Section 36-4-103 on the grounds of irreconcilable differences. In the Final Decree of Divorce, the Trial Court adopted a Permanent Parenting Plan and a Marital Dissolution Agreement.

The Permanent Parenting Plan gave Appellee primary residential parent status, and requires Appellant to pay $1,210 per month in child support. Of particular interest in this case are the following provisions of the Marital Dissolution Agreement:

B. **DEFINED BENEFIT PLAN**: Husband is a participant under the General Motors Corporation defined benefit pension plan (General Motors Pension Plan "GM Plan"). For the purposes of marital property division, Wife is hereby granted a portion of Husband's retirement benefits under the GM Plan as designated below....

(I) **Amount of Wife's Benefits:** Effective as of such Assignment Date, Wife shall be assigned a portion of Husband's retirement benefits in an amount equal to Fifty Percent (50%) of the Marital Portion of the Husband's Accrued Benefit under the GM Plan as of the Husband's benefit commencement date, or the Wife's benefit commencement date, if earlier....The parties estimate that Wife's share of such plan shall not be less than One Thousand Three Hundred Sixty-Five ($1,365.00) Dollars per month through age sixty-two (62) and Seven Hundred Seventy Three ($773.00) Dollars per month thereafter.

...

(iii) Commencement Date and Form of Payment to Wife: Wife may elect to commence her share of the benefits as soon as administratively feasible following the date the QDRO is approved by the Plan Administrator, or at the earliest date permitted under the terms of the Plan, if later. Benefits will be payable to Wife in any form or permissible option otherwise permitted under the terms and provisions of the GM Plan, other than a Qualified Joint and Survivor Annuity with her current spouse as the beneficiary.

...

(ix) **A QDRO Shall Issue:** A Qualified Domestic Relations Order (QDRO) shall be prepared and submitted to these plans and accounts according to the terms of this agreement...

...

11. **ALIMONY.** Husband shall pay Wife alimony *in futuro* in the amount of One Thousand ($1,000.00) Dollars per month beginning November 1, 2003 and continuing until Wife's remarriage, death, or Husband's death, whichever is earlier. Alimony shall be direct deposited into Wife's account. As additional alimony, Husband shall pay Wife one-half of his GM retirement beginning November 1, 2003 without deduction for taxes until the QDRO is approved and Wife begins to receive her share of such retirement plan. Husband states his current GM retirement benefit is Two Thousand Seven Hundred Thirty ($2,730.00) Dollars gross per month and Wife's share should be One Thousand Three Hundred Sixty-Five ($1,365.00) Dollars per month....

12. **ATTORNEY'S FEES AND COSTS.** The parties agree that Husband shall pay wife's attorney fees in the amount of Four Thousand ($4,000)

Dollars as alimony *in solido*, which shall not be tax deductible to Husband nor income to Wife.

...

15.   **ENFORCEMENT**.  In the event it becomes reasonably necessary for either party to institute legal proceedings to procure the enforcement of any provisions of this Agreement, he or she shall also be entitled to a judgment for reasonable expenses, including attorney's fees, incurred in prosecuting the action.

Following the Final Decree of Divorce on November 17, 2003, which adopted the Permanent Parenting Plan and Marital Dissolution Agreement, Appellant began experiencing health problems. Sandra Sue Worrell (Worrell), a psychotherapist and licensed clinical social worker (L.C.S.W.), wrote a letter dated January 18, 2005 on Appellant's behalf, stating in part:

> This letter is being written on behalf of my patient Mr. Clayton Thompson, and I am asking that he be taken out of work for a minimum of four to six weeks....I am quite alarmed by his objective and subjective presentation, and his level of Major Depression, with Post Traumatic Stress Disorder symptoms in the severe range.  At this time I am very concerned due to Mr. Thompson expressing homicidal ideation and passive suicidal ideation.  He reports that he is also experiencing dangerously high blood pressure and is currently taking medication.  Additionally, Mr. Thompson presents with hopelessness and helplessness, and expressed the fear that he might lose his impulse control in his work environment....he is presenting with very serious depressive symptoms which need to be treated immediately to lower his level of stress and anxiety, therefore I am making the recommendation to take him out of work for four to six weeks.

On March 3, 2005, Worrell sent the letter to Dr. Joe Moss (Moss) with a handwritten note requesting that Appellant be "taken out of work for 6-8 weeks due to increased depressive symptoms and decreased coping capacities, and passive suicide ideation."  On March 7, 2005, Moss diagnosed Appellant with severe depression, anxiety,  hypertension (high blood pressure), peptic ulcer disease, and irritable bowel syndrome.  Moss noted that Appellant had not yet sufficiently recovered to the point that he could return to work.

On February 18, 2005, Appellee filed a Motion for Contempt, citing paragraph eleven of the Marital Dissolution Agreement and alleging that she had "yet to start receiving her share of the GM retirement benefit."  In her Petition, Appellee claimed that she had not received a payment in accordance with paragraph eleven of the Marital Dissolution Agreement since June of 2004.  The Petition alleged that such a willful refusal to pay the fund constituted eight counts of criminal contempt.

On March 15, 2005, Appellant filed an Answer to Petition for Contempt and Counter-Petition to Modify Child Support and Alimony.  In his Answer, Appellant claimed that his failure to pay Appellee her share of the GM retirement benefit was not willful, as he did not receive any GM

retirement benefits at the time. In his Counter-Petition to Modify Child Support and Alimony, Appellant first addressed the child support award, stating the following:

> Since the entry of the Final Decree of Divorce, Mr. Thompson has experienced a substantial and material change in circumstances, having been taken out of work by his doctor from January 24, 2005 to February 21, 2005 and from March 3, 2005 to April 11, 2005 due to his medical condition. (See letters attached as Exhibit A and B) In addition, a significant variance exists between the amount of child support Mr. Thompson is currently paying and the amount of child support required to be paid under the Tennessee Child Support Guidelines.

Appellant also addressed the alimony and retirement plan awards. In doing so, he first referred to his absences from work mentioned above. Further, he cited "an unreasonable delay in entering the QDRO pursuant to the Final Decree of Divorce." As a basis for his modification of alimony request, Appellant noted that "[t]he parties did not contemplate that it would take over sixteen (16) months for Ms. Thompson to begin receiving her share of the retirement benefits directly from the General Motors Corporation." According to correspondences between parties' counsel, the preparation and attainment of the QDRO was Appellee's responsibility. However, in an affidavit, Appellee noted that the Plan Administrator refused to correspond with her without authorization from Appellant, which had been requested several times to no avail. Appellant also wanted to clarify what he perceived as a misstatement in the Final Decree of Divorce, specifically noting that he neither currently nor since the Final Decree received retirement benefits.

On November 4, 2005, the Trial Court issued its Order in response to the parties' Motions, stating in relevant part:

> The Court finds that Respondent Clayton Thompson, Jr. (hereinafter "Mr. Thompson") is obligated under Paragraph 11 of the Marital Dissolution Agreement to pay Respondent Mary Kay Thompson (hereinafter "Ms. Thompson") One Thousand Three Hundred Sixty-Five and 00/100 Dollars ($1,365.00) per month (hereinafter referred to as "retirement alimony"), which represents a stopgap provision until a Qualified Domestic Relations Order (QDRO) is approved and Ms. Thompson begins to receive her share of Mr. Thompson's pension plan.

> As of the date of trial, Mr. Thompson is Sixteen months in arrears on the retirement alimony obligation, for a total arrearage of Twenty One Thousand Eight Hundred Forty and 00/100 Dollars ($21,840.00).

> Mr. Thompson's current disability status with General Motors is unsupported by the evidence. The Court finds that the testimony of Mr. Thompson's counselor Sandra Sue Worrell, L.C.S.W., is insufficient to establish a material change in circumstances. Upon reviewing all the evidence presented, the Court finds that Mr.

-4-

Thompson is capable of employment that pays at or near the rate of his job at General Motors and is, therefore, willfully underemployed.

Based upon the proof that is before this Court, Mr. Thompson has the ability to meet both the alimony obligations set forth in Paragraph 11 of the Marital Dissolution Agreement and the child support obligation in the November 17, 2003 Permanent Parenting Plan. The proof fails to establish that there has been a material change in his circumstances that rendered him unable to meet these obligations. Furthermore, the health proof admitted at trial fails to support a finding that Mr. Thompson's mental health condition has changed his ability to work at a job that yields a significant variance in terms of his income for child support purposes.

The Court further finds that Mr. Thompson's priorities are out of balance in the way that he chooses to spend the income that is available to him. Mr. Thompson has reasonably good credit, he is able to pay ahead on his bills, purchase gifts for others outside of his family, and take trips, all of which depletes the cash that should go to his support obligations under the Marital Dissolution Agreement and Permanent Parenting Plan.

The Marital Dissolution Agreement is silent as to whether the retirement alimony is Alimony *in Futuro* or Alimony *in Solido*. The Court finds that what was contemplated by the parties in the retirement alimony section of the Marital Dissolution Agreement was stop-gap provision provided to Ms. Thompson by Mr. Thompson until the alimony is paid through the QDRO. It is, therefore, the finding of this Court that based on the evidence presented and review of the controlling case law that the retirement alimony is Alimony *in Solido*, and therefore not modifiable. See Amos v. Amos, 879 S.W.2d 856, 857 (Tenn.Ct.App.1994); Isabell vs. Isabell, 816 S.W.2d 735 (Tenn.1991).

Finally the Court finds that some of the fault for the delay in qualifying the Domestic Relations Orders belongs to people other than Mr. Thompson.

It is therefore **ORDERED, ADJUDGED and DECREED** that Clayton Thompson, Jr. is in willful civil contempt of this Court's Orders for failure to make payments of alimony in the amount of One Thousand Three Hundred Sixty-Five and 00/100 Dollars ($1,365.00) per month since July 2004.

It is further **ORDERED, ADJUDGED and DECREED** that a judgment shall issue against Clayton Thompson, Jr. in the amount of Twenty One Thousand Eight Hundred Forty and 00/100 Dollars ($21,840.00).

On appeal, Appellant complains of the failure of the trial court to modify the $1,000 per month alimony *in futuro* and the holding that the $1,365 per month alimony pending the approval

of the QDRO was alimony *in solido* and not modifiable. He further complains that the trial court erred in not reducing his $1,210 per month child support obligation.

## II. ANALYSIS

Appellant asserts, and the record shows, that at the time of the divorce and the Marital Dissolution Agreement (November 17, 2003) he was earning $124,000 per year from Saturn Corporation. By the year 2004, his earnings had been reduced to $82,977 per year. By March 5, 2005, his income was reduced to $715 per week in sick leave.

All of the findings of the trial court, except the finding that the $1,365 per month temporary alimony is non-modifiable, are predicated upon the antecedent finding that Appellant is voluntarily underemployed and thus chargeable with potential income. The record before the Court does not support this finding. Nowhere in the pleadings is it asserted that Appellant is voluntarily underemployed. There is only a general denial as to any material change of circumstances. This denial places in issue the existence of a material change of circumstances and casts upon the party seeking modification the burden of proof as to such material change in circumstance. *Azbill v. Azbill*, 661 S.W.2d 682, 686 (Tenn.Ct.App.1983). This well settled general rule does not, however, cast the burden upon Appellant to prove that he is not willfully underemployed. This burden rests upon the party asserting willful underemployment. *Demers v. Demers*, 149 S.W.3d 61, 69 (Tenn.Ct.App.2003); *Richardson v. Spanos*, 189 S.W.3d 720, 727 (Tenn.Ct.App.2005).

While the record shows Appellant to have many shortcomings, at the time of the hearing he was 52 years of age with 35 years of steady employment as an electrician with General Motors where he maintained an apparently exemplary record. He suffered from physical maladies, perhaps brought on in some measure by excessive medications and an erratic lifestyle, but the record simply does not establish a basis for finding willful underemployment.

Whether or not Appellant can carry his burden of proof as a material change of circumstance based upon his actual income and economic circumstances will address itself to the trial court on remand. We hold only that the proof in the record provides no adequate basis for a finding of voluntary underemployment and resulting use of potential income as a basis for setting child support and alimony.

The only other question reviewable at this time is the trial court's holding that the $1,365 per month temporary alimony award pending the effective date of a QDRO is alimony *in solido* and not modifiable rather than alimony *in futuro* and thus modifiable. For some reason, and apparently despite the best efforts of all parties, the Qualified Domestic Relations Order remains elusive to this day. This stopgap alimony award lacks the certainty necessary for alimony *in solido* and is thus alimony *in futuro* under *Waddey v. Waddey*, 6 S.W.3d 230, 232 (Tenn.1999).

Whether in fact alimony or child support should be modified addresses itself to the trial court on remand.

The judgment of the trial court is vacated and the case remanded for further proceedings in conformity herewith.  Costs of the cause are assessed to Appellee.


_____
WILLIAM B. CAIN, JUDGE