IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 8, 2015

JODI LYNN JENKINS v. STEVEN LOUIS JENKINS

Appeal from the Chancery Court for Sullivan County at Kingsport
No. K0039313      E.G. Moody, Chancellor

No. E2014-02234-COA-R3-CV-FILED-SEPTEMBER 25, 2015

The plaintiff, Jodi Lynn Jenkins ("Wife"), filed this divorce action against the defendant, Steven Louis Jenkins ("Husband"), on March 20, 2014.  Prior to trial, the parties reached an agreement regarding certain issues, including an equitable division of their marital property, a permanent parenting plan, and child support.  The trial court conducted a hearing on September 10, 2014, regarding the remaining issues of alimony and attorney's fees.  Following the hearing, the trial court entered an order awarding Wife alimony *in futuro* in the amount of $3,500 per month until Husband's child support obligation terminated and $4,500 per month thereafter.  The court also awarded Wife $5,000 in attorney's fees.[1]  Husband timely appealed.  Discerning no error, we affirm the trial court's judgment.  We remand this action to the trial court for a determination regarding the issue of a reasonable award of attorney's fees to Wife incurred in defending this appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., C.J., and D. MICHAEL SWINEY, J., joined.

Amber Floyd Lee, Johnson City, Tennessee, for the appellant, Steven Louis Jenkins.

Gregory W. Francisco, Kingsport, Tennessee, for the appellee, Jodi Lynn Jenkins.

---

[1] The trial court's award of attorney's fees to Wife was not appealed.

# OPINION

## I. Factual and Procedural Background

The parties were married on June 5, 1990. Three children were born of the marriage, two of whom had attained the age of majority while the remaining minor child was seventeen years old by time of trial. During the marriage, Wife earned a bachelor's degree in elementary education with a special education endorsement. Early in the marriage, Wife taught school for approximately one year before transitioning to a stay-at-home parent for the parties' children. Wife subsequently taught English as a second language ("ESL") for brief periods when the parties resided in a foreign country. During her work as an ESL teacher, Wife began experiencing symptoms of Post-Traumatic Stress Disorder ("PTSD"), which she attributed to sexual abuse that she suffered as a child.

Following the family's return to the United States, Wife began receiving therapeutic treatment for PTSD and also began taking medications for depression and anxiety. Wife explained that she was unable to return to teaching elementary school students because associating with children of such age worsened her condition. Wife stayed home to take care of the parties' children and also served as a caregiver for her ailing parents. At some point, Wife discovered that for her, yard work was therapeutic. This led to Wife's establishing a business known as Eclectic Handywoman, wherein she offered various services for hire, including mowing, landscaping, sitting with elderly clients, and other tasks. Wife continued to operate this business at the time of trial, earning approximately $1,000 per month.

Husband obtained a higher level of education than Wife. Wife testified that Husband was enrolled in graduate school when the parties met; however, the record is unclear regarding which advanced degrees Husband earned, if any. He was employed throughout the marriage in various teaching or technology-related positions. By trial, Husband maintained employment with Bank of America, earning gross income exceeding $12,000 per month. Husband also owned a software business named Synaptian, which yielded a net income of approximately $700 per month. In addition, the parties owned various rental properties, from which they also derived monthly income.

Following months of marital counseling, the parties separated in early 2014 when Husband left the marital residence. Wife filed the instant action on March 20, 2014, seeking a divorce, equitable distribution of the marital estate, child support, and alimony. The trial court conducted a hearing on September 10, 2014, during which Husband and Wife were the only witnesses. At the hearing's outset, the parties entered a stipulation of

2

agreement, which detailed their settlement of certain issues involving property division, their permanent parenting plan, and an agreed amount of child support. In their agreement, the parties established that the marital residence would be sold and the proceeds equally divided. Wife would be permitted to continue living in the marital residence until the sale or, at the latest, until December 1, 2015. Husband was awarded his software business and its assets. Likewise, Wife was awarded her handywoman business and its assets.

The parties further agreed that certain rental properties ("Martindale" and "Old Embreeville") would be sold and the proceeds equally divided. Husband retained other valuable rental properties owned by the parties. In exchange, Wife was to be awarded all of the parties' retirement accounts and a payment of $14,432 from Husband. Overall, each party received marital assets worth nearly $300,000 in the division. The parties determined that Wife should be the primary residential parent for their youngest daughter, with Husband receiving co-parenting time on alternating weekends. The parties further agreed that Husband's child support obligation would be $1,208 per month.

Following the hearing, the court entered a judgment awarding a divorce to Wife based upon Husband's inappropriate marital conduct. The trial court adopted and incorporated the parties' agreement regarding the equitable division of their marital property. Further, the court made findings regarding the statutory factors related to spousal support, determining that Wife should receive alimony *in futuro* in the amount of $3,500 per month until Husband's child support obligation terminated and $4,500 per month thereafter. Wife was also awarded $5,000 in attorney's fees as alimony *in solido*. Husband timely appealed.

## II. Issues Presented

The parties present the following issues for our review, which we have restated slightly:

1. Whether the trial court abused its discretion in awarding Wife alimony *in futuro*.

2. Whether the trial court erred in the amount of alimony awarded.

3. Whether Wife is entitled to an award of attorney's fees on appeal.

## III. Standard of Review

Regarding alimony, our Supreme Court has "repeatedly and recently observ[ed] that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award." *See Gonsewski v. Gonsewski,* 350 S.W.3d 99, 105 (Tenn. 2011). The Court has further explained:

> [A] trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard,* 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent,* 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson,* 318 S.W.3d at 335 (quoting *Lee Medical, Inc. v. Beecher,* 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision.

*Id.* at 105-06 (other internal citations omitted).

## IV. Award of Alimony *in Futuro*

Husband argues that the trial court abused its discretion by awarding Wife alimony *in futuro*. According to Husband, the trial court should have determined that Wife had the ability to be rehabilitated and could attain a standard of living similar to that which Husband would enjoy following the divorce. Husband further contends that Wife's claimed expenses were inflated and improperly included expenses attributable to other adults in the household, namely the parties' two adult daughters. Following a thorough

4

review of the evidence and the statutory factors regarding alimony, we disagree with Husband's contentions.

Our statutory scheme regarding awards of alimony, provided in Tennessee Code Annotated § 36-5-121 (2014), states in pertinent part:

(c)(1) Spouses have traditionally strengthened the family unit through private arrangements whereby one (1) spouse focuses on nurturing the personal side of the marriage, including the care and nurturing of the children, while the other spouse focuses primarily on building the economic strength of the family unit. This arrangement often results in economic detriment to the spouse who subordinated such spouse's own personal career for the benefit of the marriage. It is the public policy of this state to encourage and support marriage, and to encourage family arrangements that provide for the rearing of healthy and productive children who will become healthy and productive citizens of our state.

(2) The general assembly finds that the contributions to the marriage as homemaker or parent are of equal dignity and importance as economic contributions to the marriage. Further, where one (1) spouse suffers economic detriment for the benefit of the marriage, the general assembly finds that the economically disadvantaged spouse's standard of living after the divorce should be reasonably comparable to the standard of living enjoyed during the marriage or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

(d)(1) The court may award rehabilitative alimony, alimony in futuro, also known as periodic alimony, transitional alimony, or alimony in solido, also known as lump sum alimony or a combination of these, as provided in this subsection (d).

(2) It is the intent of the general assembly that a spouse, who is economically disadvantaged relative to the other spouse, be rehabilitated, whenever possible, by the granting of an order for payment of rehabilitative alimony. . . .

(3) Where there is relative economic disadvantage and rehabilitation is not feasible, in consideration of all relevant factors, including those set out in subsection (i), the court may grant an order for payment of support and

5

maintenance on a long-term basis or until death or remarriage of the recipient, except as otherwise provided in subdivision (f)(2)(B).

(4) An award of alimony in futuro may be made, either in addition to an award of rehabilitative alimony, where a spouse may be only partially rehabilitated, or instead of an award of rehabilitative alimony, where rehabilitation is not feasible. Transitional alimony is awarded when the court finds that rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce, legal separation or other proceeding where spousal support may be awarded, such as a petition for an order of protection.

(5) Alimony in solido may be awarded in lieu of or in addition to any other alimony award, in order to provide support, including attorney fees, where appropriate.

(e)(1) Rehabilitative alimony is a separate class of spousal support, as distinguished from alimony in solido, alimony in futuro, and transitional alimony. To be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

* * *

(f)(1) Alimony in futuro, also known as periodic alimony, is a payment of support and maintenance on a long term basis or until death or remarriage of the recipient. Such alimony may be awarded when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible . . . .

* * *

(i) In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

In the instant action, the trial court made extensive findings of fact regarding these statutory factors, which we paraphrase as follows:

1.  Husband has a much greater earning capacity.  Although Wife might be slightly underemployed, she could not increase her income without additional training or education.  Wife has been out of the labor market for twelve years.  Wife is economically disadvantaged compared to Husband, and rehabilitation is not feasible.

2.  Husband has more education and training than does Wife.

3.  The twenty-four-year marriage was of long duration.

4.  The parties are similar in age, but Wife has been diagnosed with PTSD, which affects her earning capacity.

5.  Both parties are in good physical health.

6.  Neither party will be caring for a minor child for an extended period because the youngest child is near the age of majority.

7.  Neither party has any separate property.

8.  The parties equitably divided their marital assets.

9.  The court considered the parties' standard of living during the marriage.

10. Both parties made tangible and intangible contributions to the marriage.

11. Husband is at fault in the divorce.

12. Wife will incur greater tax liability from the property division.

The trial court further found that Wife had demonstrated a need for permanent alimony and that Husband had the ability to pay such spousal support.  The court

8

specifically found that Husband's income and expense statement demonstrated that he currently enjoyed a monthly surplus in the amount of $1,171. After deducting from Husband's expenses the mortgage payment amounts for the marital residence and the Martindale rental property, both of which were in the process of being sold, the court found that Husband would have a monthly surplus of at least $4,000. The court also determined that Husband received monthly rental income and had been living solely upon the funds in the rental-income account for the preceding few months. Further, the court concluded that when his child support obligation to Wife terminated, Husband would maintain a monthly income surplus of at least $5,208.

Concerning Wife's income and expenses, the trial court found that although Wife reported $6,190 in monthly expenses, certain expenses needed to be deducted. The court determined that Wife's anticipated mortgage/rental expense should be adjusted to $1,000 per month rather than $1,300 per month, finding the lesser amount to be comparable to that claimed by Husband. The court further deducted "overlapping" or excessive food and clothing expenses, thereby reducing Wife's total monthly expenses to $5,640. The court found Wife's monthly income to be $1,000 from her business, noting that she would also be receiving $1,208 per month in child support for a short time. Determining that Wife would therefore have a monthly financial need of $3,432, the court awarded her alimony *in futuro* in the amount of $3,500 per month. The court also found that upon the cessation of Husband's child support obligation, Wife's need would increase by approximately $1,000 per month. At that time, Wife would no longer receive $1,208 in monthly child support but would experience a reduction in her monthly expenses by $253 for expenses related to the child. Ergo, the court concluded that Wife's *alimony in futuro* should increase to $4,500 per month when Husband's child support obligation ended.

Following our thorough review of the evidence presented in this case, we agree with the trial court's findings of fact and conclusions of law. Husband's earning capacity from his employment was significantly greater than Wife's earning capacity from her business. In addition, Husband retained income-producing rental properties in the division of marital assets. Even with additional education or training, Husband presented no evidence that Wife's income level could ever be comparable to his.

Furthermore, we find no error in the trial court's determination of Wife's need and Husband's ability to pay spousal support. The trial court made reasonable adjustments to the parties' expenses based upon the evidence presented, reducing expenses that were terminating or duplicative. The proof demonstrated that Husband would enjoy a large monthly surplus and that Wife's reasonable expenses exceeded her income. We find no abuse of discretion in either the nature, amount, or duration of the trial court's award of alimony.

Husband asserts that when fashioning its award of alimony *in futuro*, the trial court should have considered that Wife was including the needs of her two adult daughters in her monthly expense computation.  As Husband points out, Tennessee Code Annotated § 36-5-121 (f)(2) provides:

> (A)  An award of alimony in futuro shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances.
>
> (B)  In all cases where a person is receiving alimony in futuro and the alimony recipient lives with a third person,[2] a rebuttable presumption is raised that: . . .
>
> > (ii)  The third person is receiving support from the alimony recipient and the alimony recipient does not need the amount of alimony previously awarded and the court should suspend all or part of the alimony obligation of the former spouse.

We note that the language utilized in this statutory subsection suggests that it is intended to apply in an action involving an alimony modification rather than an initial alimony award.  For example, subsection (B) refers to a person "receiving alimony in futuro," and subsection (B)(ii) speaks to alimony "previously awarded."  Tenn. Code Ann. § 36-5-121 (f)(2)(B); *see also Gentry v. Gentry*, No. M2007-00876-COA-R3-CV,

---

[2] As this Court has previously explained:

> Tennessee courts have consistently held that the "lives with a third person" language applies to any third person, including adult children.  *See Azbill v. Azbill,* 661 S.W.2d 682, 686 (Tenn. Ct. App. 1983) (observing that "[n]owhere does [the statute] indicate that there must be any type of liason, sexual or otherwise" between alimony recipient and third person); *Edwards v. Edwards,* No. E2004–02490–COA–R3–CV, 2005 WL 2043580 at *2 (Tenn. Ct. App. E.S., filed Aug. 25, 2005) ("third person" included adult daughter and son-in-law); *Woodall,* 2004 WL 2345814 at *4 (stating that "the nature of the relationship" between alimony recipient and third person "is irrelevant to the statute"); *Benning v. Benning,* No. 01A01–9805–CV–00238, 1999 WL 51877 at *2 (Tenn. Ct. App. E.S., filed Feb. 5, 1999) ("the statute does not require any specific kind of relationship for its application. It applies in all cases where an alimony recipient 'lives with a third person,' regardless of the relationship, or the gender of the third person"); *Hubbard v. Hubbard,* No. 03A01–9603–CV–00108, 1996 WL 563890 at *2 (Tenn. Ct. App. E.S., filed Oct. 1, 1996) ("the statute makes no exceptions as to any third party. Under the statute, it is clear that the adult son living with appellee is a third party as contemplated by the statute"); *Broersma v. Broersma,* No. 85–290–II, 1986 WL 4848 at *2 (Tenn. Ct. App. M.S., filed Apr. 25, 1986) (third person "is one of plaintiff's adult daughters who continued to live in her mother's home even after she reached her majority").

*Hickman v. Hickman*, No. E2013-00940-COA-R3-CV, 2014 WL 786506 at *6 (Tenn. Ct. App. Feb. 26, 2014).

2008 WL 275881 at *3 (Tenn. Ct. App. Jan. 31, 2008) (explaining that although the party seeking the alimony modification normally bears the burden of proving that the modification is warranted, Tennessee Code Annotated § 36-5-121 (f)(2)(B) represents one type of change in circumstances wherein the party receiving the alimony will bear the evidentiary burden).

Assuming, *arguendo*, that this statutory subsection would apply to the instant action involving an initial alimony award, we do not find Husband's argument regarding Wife's alleged contributions to the parties' adult children to be persuasive. The evidence demonstrated that the parties' two oldest daughters were living away at college and did not reside with Wife. Wife's only testimony regarding her adult children was that while her food expense might decrease slightly when the youngest child left for college, she also considered that their daughters would still be home during summer breaks. Wife also admitted that her listed expenses for school supplies, tutoring, and music lessons, which were attributable to the parties' youngest daughter, would end when that daughter graduated from high school. According to Wife, all other monthly expense amounts listed were for her personally.

In determining the appropriate amount of alimony to award to Wife, the trial court deducted $200 from her claimed food expense. Furthermore, when determining the proper adjustment to Wife's alimony award upon cessation of Husband's child support obligation, the trial court deducted all expenses related to the youngest daughter. Thus, we conclude that the trial court properly considered and deducted any amounts attributable to the parties' adult children. We affirm the trial court's award of alimony in terms of nature, duration, and amount.

V. Attorney's Fees on Appeal

Wife asserts that she should be awarded her attorney's fees incurred in defending this appeal regarding her award of alimony, pursuant to Tennessee Code Annotated § 36-5-103 (c) (2014), which provides:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

11

Further, as this Court has elucidated:

> Our supreme court has defined the factors that should be applied when considering a request for attorney fees incurred on appeal. These factors include the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered. *See Folk v. Folk,* 357 S.W.2d 828, 829 (Tenn. 1962).

*Dulin v. Dulin*, W2001-02969-COA-R3-CV, 2003 WL 22071454 at *10 (Tenn. Ct. App. Sept. 3, 2003).

We determine this to be an appropriate case for an award of attorney's fees on appeal. Husband did not achieve success in his appeal of the alimony award to Wife. Further, we recognize that Husband has a significantly higher earning capacity and thus a greater ability to pay the requested fees. Therefore, we remand this issue to the trial court for the limited purpose of determining a reasonable amount of attorney's fees to be awarded to Wife for successfully defending Husband's appeal.

## VI. Conclusion

For the foregoing reasons, we affirm the trial court's award of alimony *in futuro* to Wife in all respects. We remand, for the trial court's determination, the issue of a reasonable award of attorney's fees to Wife incurred in defending this appeal. Costs of this appeal are assessed to the appellant, Steven Louis Jenkins.

_____
THOMAS R. FRIERSON, II, JUDGE