IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 24, 2015 Session

**REGINA D. WISER v. CYRUS W. WISER, JR.**

**Appeal from the Circuit Court for Rutherford County**
**No. 50085     Larry B. Stanley, Jr., Judge**

_____

**No. M2013-02510-COA-R3-CV – Filed April 30, 2015**

_____

Husband was ordered in an earlier proceeding to increase his alimony and child support payments to Wife. The following year, Husband filed a petition to reduce his alimony and child support payments due to a substantial and material change of circumstances. Husband alleged both that Wife was cohabitating with another person and that Husband's income had significantly decreased. The trial court denied Husband's petition and awarded Wife attorney's fees. Husband appeals, and we affirm the trial court's judgment in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which RICHARD H. DINKINS, and W. NEAL MCBRAYER, JJ., joined.

Brad William Hornsby, Heather Graves Parker, and Thomas L. Reed, Jr., Murfreesboro, Tennessee, for the appellant, Cyrus W. Wiser, Jr.

Michael K. Parsley, David Scott Parsley, and Joshua G. Strickland, Nashville, Tennessee, for the appellee, Regina D. Gencsi (Wiser).

## OPINION

### I. PROCEDURAL HISTORY

Cyrus W. Wiser, Jr. ("Husband") and Regina D. Wiser ("Wife") were divorced in August 2005, following a marriage lasting twenty-three years. They have two children who were nine and thirteen at the time of the divorce. Husband was ordered to pay Wife

alimony in varying amounts until 2017, when Wife would become the owner of two office buildings that would produce income for her ongoing support. Husband was also ordered to pay child support.

In June 2007, Wife filed a petition to increase Husband's alimony and child support payments. The trial court granted Wife's request for an increase in child support but denied her request for an increase in alimony. Wife appealed the trial court's order to the Court of Appeals, which reversed the trial court's judgment on the issue of alimony. The Court of Appeals wrote:

> [W]e must conclude that the trial court's decision not to modify Husband's alimony obligation in light of the very substantial increase in his income amounts to an abuse of discretion. The award of alimony *in futuro* is modified to $10,000 per month, retroactive to the date on which Wife filed her petition to modify the alimony award. We note that the original alimony award was set to decrease by $1000 per month every four years, until its termination twelve years from the date of the decree. In light of the evidence that Wife has struggled to establish a career after her long absence from the workforce, as well as the fact that her child support will decrease and terminate as the two children reach majority in 2010 and 2014, the alimony amount shall remain constant until the termination date. The termination date for Husband's alimony obligation remains unchanged from the termination date set in the original decree of divorce.

*Wiser v. Wiser*, 339 S.W.3d 1, 18 (Tenn. Ct. App. 2010). The Court of Appeals granted Wife's request for an award of attorney's fees incurred at trial and on appeal and remanded that issue with directions to the trial court to determine the reasonable amount of fees to award. *Id*. at 22.

In a petition filed in April 2011, Husband sought a reduction or termination of his alimony payments and a reduction of his child support based on a decrease in his income.[1] Husband amended his petition on September 21, 2011, to include allegations regarding Wife's cohabitation with her boyfriend. Husband asserted that Wife's cohabitation and the decrease in his income each constituted a substantial and material change of circumstances that warranted a reduction or termination of Husband's alimony obligation.

This case was tried over the course of four days. The parties introduced what the trial court referred to as a "mountain of evidence" in support of their respective positions. Despite Husband's "painfully expensive attempts to prove [Wife] was co-habiting with her boyfriend," the trial court found that Wife was not cohabitating with anyone and that

---

[1] The trial court did not alter Husband's child support obligation, and child support is not at issue on appeal.

2

Husband would not be relieved of his alimony obligation. In its order entered on January 4, 2013, the court wrote:

> This Court estimates that [Husband] has spent over $50,000 in man hours and expenses on this matter. In addition, [Husband's] employees do not seem credible as to their testimony with regard to [Wife's] activities with Mr. Smith. . . . Although [Wife] makes monthly trips to her boyfriend's second home in Florida, this court does not believe that such activity can be classified as cohabiting. These trips generally last between 4 and 6 days. [Wife] does not pay Mr. Smith's bills.

The trial court found that Wife's need for alimony "has not changed significantly," but that Husband's income had decreased during the period from April 14, 2011, until January 31, 2012. The court reduced Husband's alimony obligation for this period from $10,000 per month to $5000 per month. The court did not alter in any other respect Husband's obligation to pay Wife alimony at the rate of $10,000 per month for the remainder of the twelve-year term set forth in the original decree of divorce.

Wife requested an award of her attorney's fees, and the trial court addressed this issue in an order filed on January 23, 2013, and in the Final Order entered on October 4, 2013. In addition to determining the amount of fees Wife was entitled to receive from the instant case, the trial court determined the fees Wife was entitled to receive from the earlier proceeding as well as for the appeal of the earlier case as a result of the remand from the Court of Appeals in 2010. The court awarded Wife a total of $178,778.22 in fees and costs, which included pre-judgment and post-judgment interest up to the date of the order. The court awarded Wife $115,230.14 for the fees she incurred defending Husband's petition to reduce alimony and child support, and it awarded Wife discretionary costs in the amount of $5002.90. The discretionary cost award covered costs Wife incurred in pursuing her earlier petition to increase her alimony payments as well as in defending Husband's petition to reduce alimony and child support.

Husband appeals from the Final Order and argues the trial court erred in three ways. First, Husband contends the evidence preponderates against the trial court's finding that Wife did not cohabitate with Mr. Smith. Second, Husband asserts the trial court erred in finding he was only entitled to a partial modification of his alimony payments. Third, Husband claims the trial court erred in its award of attorney's fees and costs to Wife. Wife seeks an award of fees she incurred on appeal.

II. ANALYSIS

As part of the final decree of divorce in 2005, Husband was ordered to pay Wife alimony in futuro for twelve years, when Husband would transfer title to two office buildings over to Wife. Husband was under an order to pay Wife alimony in the amount

of $10,000 per month when he filed his petition to modify in April 2011. An award of alimony in futuro may be modified or terminated upon proof that a "substantial and material change in circumstances has occurred since the entry of the original support decree." *Bogan v. Bogan*, 60 S.W.3d 721, 727-28 (Tenn. 2001); *see* Tenn. Code Ann. § 36-5-121(f)(2)(A). To be material, a change in circumstances must have been unforeseeable, unanticipated, or not within the parties' contemplation when the decree for alimony was awarded. *Bogan*, 60 S.W.3d at 728. To be substantial, the change must significantly affect either the obligor spouse's ability to pay or the obligee spouse's need for the support. *Id.* Even if Husband is able to show a material and substantial change in circumstances, "[m]odification must also be justified under the factors relevant to an initial award of alimony, particularly the receiving spouse's need and the paying spouse's ability to pay." *Woodall v. Woodall*, M2003-02046-COA-R3-CV, 2004 WL 2345814, at *2 (Tenn. Ct. App. Oct. 15, 2004); *see Bogan*, 60 S.W.3d at 730.

The Tennessee Supreme Court has set forth the standard of review appellate courts are to apply in cases involving the modification of alimony:

> Because modification of a spousal support award is "factually driven and calls for a careful balancing of numerous factors," *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989), a trial court's decision to modify support payments is given "wide latitude" within its range of discretion, *see Sannella v. Sannella*, 993 S.W.2d 73, 76 (Tenn. Ct. App. 1999). In particular, the question of "[w]hether there has been a sufficient showing of a substantial and material change of circumstances is in the sound discretion of the trial court." *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999) (citations omitted). Accordingly, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes." *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998); *see also Goodman v. Goodman*, 8 S.W.3d 289, 293 (Tenn. Ct. App. 1999) ("As a general matter, we are disinclined to alter a trial court's spousal support decision unless the court manifestly abused its discretion."). When the trial court has set forth its factual findings in the record, we will presume the correctness of these findings so long as the evidence does not preponderate against them. *See, e.g., Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000); *see also* Tenn. R. App. P. 13(d).

*Bogan*, 60 S.W.3d at 727.

A. Cohabitation

4

Husband alleges two circumstances justify his petition to modify: Wife's cohabitation with her boyfriend, Terry Smith, and a decrease in his income. We will first address Husband's allegation that Wife was cohabitating with Mr. Smith. Tennessee Code Annotated section 36-5-121(f)(2)(B) addresses cohabitation and provides:

In all cases where a person is receiving alimony in futuro and the alimony recipient lives with a third person, a rebuttable presumption is raised that:

(i) The third person is contributing to the support of the alimony recipient and the alimony recipient does not need the amount of support previously awarded, and the court should suspend all or part of the alimony obligation of the former spouse; or

(ii) The third person is receiving support from the alimony recipient and the alimony recipient does not need the amount of alimony previously awarded and the court should suspend all or part of the alimony obligation of the former spouse.

As the statute makes clear, if Husband can show Wife was cohabitating with Mr. Smith, a rebuttable presumption arises that Wife is contributing to Mr. Smith's support, or he is contributing to her support, and that Wife no longer needs the spousal support provided by Husband. Husband contends that Wife lived with and supported Mr. Smith, or that Mr. Smith supported Wife, and that Wife failed to rebut the statutory presumption that she does not need the alimony previously awarded.

During the trial, Wife testified that she and Mr. Smith began a romantic relationship sometime in 2006. Wife and Mr. Smith each maintain separate houses in Murfreesboro, and Wife testified that she and Mr. Smith do not provide financial support for one another. Wife testified as follows:

Q:     Do you live with Terry Smith?

A:     No, I do not.

Q:     Have you ever lived with Terry Smith?

A:     No, I have not.

Q:     Do you have a residence in Rutherford County, Tennessee?

A:     Yes, I do.

Q:     How long have you resided there?

5

A:     Since 2006.

Q:     Does your  - - does Mr. Smith have a residence in Murfreesboro, Tennessee?

A:     Yes.

Q:     Does Mr. Smith support you?

A:     No, zero.

Q:     Do you support Mr. Smith?

A:     No, zero.

Q:     Does Mr. Smith pay your - - do you have a mortgage, ma'am?

A:     Yes.

Q:     In fact, since the last time we were here, you've got a line of credit against that mortgage, now, don't you?

A:     Yes.

Q:     Does Mr. Smith pay your mortgage?

A:     No, he does not.

Q:     Does he pay your line of credit?

A:     No, he does not.

Q:     Does he pay your utilities?

A:     No.

Q:     Does he pay your credit cards?

A:     No.

Q:     Pay your lawyer fees?

A:    No.

Q:    When you're in Murfreesboro, does he buy you groceries?

A:    No.

Q:    Do you buy his groceries?

A:    No.

Mr. Smith confirmed this testimony by Wife.  Mr. Smith testified that Wife at one time had a key to his house in Murfreesboro, but he was unsure whether she still had a key.  In April 2010, Mr. Smith arranged for a house to be built for him in Florida.  Mr. Smith testified that construction of the house was completed in December 2010 and that Wife has no interest in his Florida house.

On October 5, 2012, Wife testified that she and Mr. Smith were no longer seeing each other.  Husband's attorney asked Wife whether the break-up was staged in an effort to convince the court they were not cohabitating.  Wife responded:

It had nothing to do with their pleas, or whatever.  It had everything to do with harassment, multiple cameras, on both of Mr. Smith's properties.  Multiple subpoenas, multiple depositions, slanderous comments, lies, and the stress and duress that put us in, would be hard on any relationship.  It had a lot to do with the trip when I went down there and turned around and came back.

While they were still seeing one another, however, Wife testified that she would go down to Mr. Smith's Florida house once every four to six weeks or so.  Wife was unable to specify the exact number of days she spent at Mr. Smith's house in Florida.  As the trial court noted, however, Husband went to great lengths to surveil Wife's comings and goings.  He employed individuals to install cameras, drive by Mr. Smith's house in Florida, and fly aircraft over Mr. Smith's Florida house in an effort to detect Wife's whereabouts.

Husband presented evidence that Wife spent up to 108 or so out of 294 days (37% of the time period) in Mr. Smith's house in Florida from the time the house was completed until Husband filed his amended petition alleging cohabitation.  Then, once he filed his amended petition, Husband was able to show Wife spent just 61 out of 386 days (16% of the time period) at Mr. Smith's house in Florida until the trial was completed in October 2012.  Wife acknowledged taking vacations with Mr. Smith to other destinations, and she did not dispute that she may have spent up to a third of a year with Mr. Smith on vacation.  Husband also presented evidence that Wife purchased a large

7

screen television and some pieces of furniture for Mr. Smith, which Mr. Smith used in his Florida house. Husband also presented evidence that Wife kept a few articles of clothing at Mr. Smith's house in Florida.

Husband relies on two cases to argue the evidence proved Wife cohabitated with Mr. Smith: *Honeycutt v. Honeycutt*, 152 S.W.3d 556 (Tenn. Ct. App. 2003), and *Azbill v. Azbill*, 661 S.W.2d 682 (Tenn. Ct. App. 1983). In *Honeycutt*, the husband alleged his former wife cohabitated with an unrelated male and that his alimony obligation should therefore be terminated. *Honeycutt*, 152 S.W.3d at 558-59. The husband was able to prove the wife spent about 70% of a year at her paramour's residence in Florida; that she opened new bank and security accounts in Florida; that she listed her paramour's residence as her address on the new accounts; that she kept an automobile at her paramour's residence for nine or ten consecutive months; and that she had her mail forwarded to her paramour's residence "for an extended period of time." *Id.* at 560, 565, 566. Based on this evidence, *inter alia*, the Court of Appeals concluded the wife cohabitated with her paramour and that the husband was entitled to terminate his alimony payments from the date when he filed his petition to terminate. *Id.* at 566-67.[2]

In the case *Azbill v. Azbill*, the court was interpreting the predecessor to Tenn. Code Ann. § 36-5-121(f)(2)(B)[3] to determine whether or not the former wife was cohabitating with another person within the meaning of the statute. *Azbill*, 661 S.W.2d at 684-686. The unrelated male in that case, Mr. Bell, was at the former wife's house nearly every day whether she was at home or not. *Id.* at 684. Mr. Bell listed her address on his driver's license and on three years' worth of tax returns, and he used her address as his mailing address. *Id.* at 684, 685. Evidence was introduced that Mr. Bell stayed overnight at the former wife's house and that he kept personal items at her house. When the former wife listed her house for sale, both Mr. Bell and the former wife showed the house to an individual posing as an interested buyer. *Id.* at 685.

The trial court in *Azbill* concluded that the evidence was sufficient to establish cohabitation. *Id.* at 684. On appeal, the Court of Appeals concluded the evidence did not preponderate against the trial court's finding that the former wife and Mr. Bell were cohabitating within the meaning of the statute. *Id.* at 687. The former wife was unable to rebut the statutory presumption that she did not need the alimony her former husband had

---

[2] Unlike the case at bar, however, the husband in *Honeycutt* based his request to terminate on the terms of a marital dissolution agreement ("MDA") rather than the statute on which Husband relies, Tenn. Code Ann. § 36-5-121(f)(2). *Honeycutt*, 152 S.W.3d at 558. The MDA provided that the husband would pay alimony in futuro to the wife "until such time as Wife dies, remarries, [or] cohabitates with a man not related to her . . . ." *Id.* at 561. The *Honeycutt* court found that, based on the terms of the MDA, the husband's alimony obligations were to cease in the event that the wife cohabitated with an unrelated male, regardless of whether that male was providing financial assistance to the wife. *Id.* at 563-64.

[3] The statute at issue in *Azbill* was Tenn. Code Ann. § 36-820(a)(3), which was substantially identical to Tenn. Code Ann. § 36-5-121(f)(2)(B). *Azbill*, 661 S.W.2d at 685-86.

been ordered to pay, and the Court of Appeals agreed that the husband should be able to suspend his alimony obligation, at least until Wife was no longer cohabitating with Mr. Bell. *Id.*; *see Thym v. Thym*, M2004-02389-COA-R3, 2006 WL 47109, at *6 (Tenn. Ct. App. Jan. 9, 2006) (court suspended alimony payments where obligee spouse spent six nights a week with girlfriend and former husband failed to rebut statutory presumption that he did not need alimony previously awarded).

Unlike the facts of either *Honeycutt* or *Azbill*, Wife and Mr. Smith both testified that they ended their relationship a few weeks before the end of the trial. An obligor spouse cannot rely on Tenn. Code Ann. § 36-5-121(f)(2)(B) to terminate or suspend alimony payments if the alleged cohabitation ceased before the modification petition was tried. The Court of Appeals addressed this issue in *Woodall v. Woodall*, 2004 WL 2345814 (Tenn. Ct. App. Oct. 15, 2004), and it explained:

> [T]he situation that existed at the time of trial must be considered in applying the statute. That is because, first, the statute uses the present tense, "In all cases where a person is receiving alimony in futuro and the alimony recipient **lives** with a third person. . . ." Tenn. Code Ann. § [36-5-121(f)(2)(B)] (emphasis added). Second, even if the presumptions of support and lack of need arise and are unrebutted, the court's remedy is to "**suspend** all or part of the alimony obligation," not terminate the alimony. Tenn. Code Ann. § [36-5-121(f)(2)(B)] (emphasis added). The clear implication is that if the situation justifying suspension ceases to exist, the alimony recipient may seek reinstatement or support from the former spouse.

*Id.* at *5 (emphasis in original). The *Woodall* court continued, "We can see no authority for, and no purpose to be served by, requiring a ruling based on past cohabitation and the filing and hearing of a subsequent request for reinstatement when cohabitation ceases before the trial on the original modification petition." *Id.* (footnote omitted); *see Gentry v. Gentry*, M2007-00876-COA-R3-CV, 2008 WL 275881, at *4-5 (Tenn. Ct. App. Jan. 31, 2008) (prior cohabitation cannot be basis for termination of spousal support, especially where obligee spouse shows she still needs alimony payments); *Strait v. Strait*, E2005-02382-COA-R3-CV, 2006 WL 3431933, at *5 (Tenn. Ct. App. Nov. 29, 2006) (living situation at time of trial "must be considered" to determine whether cohabitation constitutes material and substantial change of circumstances). Recognizing that an obligor spouse's petition to modify on the basis of cohabitation may cause an obligee spouse to cease the alleged cohabitation at issue, the *Woodall* court noted that it is up to the fact finder to determine whether the change in relationship was a subterfuge or not. *Woodall*, 2004 WL 2345814 at *5 n.8.

In this case, the trial court found that Husband failed to prove Wife was cohabitating with Mr. Smith. Without even remarking on the cessation of their

relationship during the trial, the trial court found that Wife's monthly trips to Mr. Smith's house in Florida generally lasted between four and six days and that this was not enough to prove cohabitation. The court also noted that Wife was not supporting Mr. Smith, and Mr. Smith was not supporting Wife.

Our review of the record shows that Husband presented evidence that Wife may have spent more than six days at a time at Mr. Smith's house in Florida at different points in time, but this alone is insufficient to prove Wife was cohabitating with Mr. Smith. Moreover, as the trial court found, there was no proof that Wife supported Mr. Smith or that Mr. Smith supported Wife. Finally, Wife testified that her need for the spousal support had not changed since it was modified a few years earlier.[4] We cannot say, based on the evidence presented at trial, that the evidence preponderated against the trial court's conclusion that Wife was not cohabitating with Mr. Smith.

## B. Husband's Decreased Income

We next turn to Husband's argument that his alimony payments should be reduced based on a decrease in his income. Husband is the sole owner of Wiser Company, LLC ("Wiser Company" or the "Company"). Husband testified that the Company's assets are significantly leveraged and that he cannot afford to continue paying Wife $10,000 per month in alimony. Husband presented voluminous and confusing evidence regarding the assets and liabilities of Wiser Company. His tax returns show that Wiser Company showed a net profit of $3,480,916 in 2009; a net loss of -$101,733 in 2010; and a net loss of -$83,841 in 2011. Even with the reported losses, however, Wiser Company had annual profits from 2009 through 2011 that averaged $1,098,447.33 per year.[5]

As the Court of Appeals held in its 2010 decision, "Husband controls the cash flow of his business, including the amount of income he withdraws and whether to pay personal expenses, such as Wife's alimony, out of the business accounts." *Wiser*, 339 S.W.3d at 14. Husband argues that because his assets are leveraged for close to or more than their values, he has nothing to liquidate to allow him to pay his $10,000 per month alimony obligation. However, the evidence shows that Husband spends money on what he wants, whenever he wants, without regard to his leveraged assets. As an example, Husband provides a credit card to the parties' daughter, and he does not limit the amount

---

[4]Wife testified in the earlier proceeding that she was a college graduate and a licensed interior designer but that she had been out of the workforce for many years while the parties were married and the children were young. Since the parties divorced, Wife was unable to find steady work in her field. She worked for a period of time at what she referred to as a "temp agency," but she was unemployed at the time of the earlier proceeding. Wife testified her only source of income was Husband's alimony and child support payments. *Wiser*, 339 S.W.3d at 8-9.

[5]This number is arrived at by adding the three years' profits and losses together and dividing that sum by three: $3,480,916 - $101,733 - $83,841 = $3,295,342; $3,295,342/3 = $1,098,447.33.

she can charge. Wife's attorney questioned Husband about these credit card charges that Husband pays each month.

> Q: 2010, the average was $1,791. You pay those, don't you?
>
> A: I choose to pay, yes, sir. Yes, sir. It doesn't have anything to do with income, but I choose to pay for my daughter.
>
> . . . .
>
> Q: Do you not think, sir, that your income should have some correlation with what you actually spend?
>
> A: It doesn't. Spending has nothing to do with it. Choosing to spend has nothing to do with income.
>
> Q: All right, sir.
>
> A: It has to do with borrowing in some cases or keep it on cash flow. Spending has to do with cash flow. It has nothing to do with income. It's totally independent.
>
> Q: All right.
>
> THE COURT: I need to be clear on this. When you use the word "cash flow," I don't necessarily have cash flow. I have income. But cash flow is money that comes to you to use as you wish, right?
>
> A: No. Cash flow would be from either receivables that would go in and it will hit the company before it hits me. In other words, I would draw –
>
> THE COURT: Right, you take it out.
>
> A: It would be receivables from clients. It could be credit facility from either borrowing in the case, like we did in 2011 from lenders. It could be not paying people that we owe on accounts payable. And it could be another credit facility that would be like the ABL [asset-based line of credit]. . . . But the cash flow doesn't mean it's created from income. It means that you've got either receivables or some other source of cash, which could be contribution for me like the $893,000 in 2011 that goes into the company to help cash flow it. . . .

THE COURT: But when you say this doesn't necessarily come from income, it comes from cash flow, talking about where the money comes from that you spend, whether it's for your son's car, or daughter's credit card. That's still considered income to you.

A: No, sir. I don't mean to argue. With all people, I don't want to argue with you.

Husband testified further about his expenditures:

Q: Would you go out as a family and buy something that the family couldn't afford?

A: You know, Mr. Parsley, when you're in business, you do have to pay yourself, as we have to pay our - - I'm obligated to myself and my family, just as much as I am to your client, for instance, or the bank, or whoever. But I do have to pick me. And I do have to pick my kids and children, I do. That doesn't mean I'm choosing them. It doesn't mean that I'm not paying somebody else. But yeah, I do. And business people tell you to do that. You do pick and pay yourself. It's hard not to. . . .

. . . .

Q: I guess that's the point, Mr. Wiser. You do what you have to do to purchase what you want to purchase, right?

A: I choose - - I do make choices as to what I pay and that doesn't mean that I'm making income when I do it.

. . . .

Q: You can afford to pay your adult daughter's rent, can't you?

A: I choose to pay my obligations to my children and my family, yes, sir, I do. "Affording" is your word. You know, it's a choice of what you pay. We haven't been making income. But we have been cash flowing. So I'm cash flowing me just like I'm cash flowing Wiser Company. . . .

Q: Can you afford to cash flow these obligations that you have now, sir?

A: I'll answer it again. But the answer would be the same as I just said. **I choose as to what to do.** (Emphasis added.)

12

Husband then testified that the draws he takes out of Wiser Company do not constitute income.

THE COURT:     At some point that money's got to be attributable to having come to you.

A:     It does.  It comes in the form of a draw.

THE COURT:     Right.  It makes income.

A:     No, sir.

THE COURT:     On your income tax return, it is.

A:     No, sir, it's not.  No, it's not income.

THE COURT:     It's profit.

A:     No, sir, it's not.

Husband asserted Wiser Company experienced financial troubles in 2010, but the evidence showed that Husband took $2,059,789 out of the Company during that year. Wiser Company purchased a new airplane with a cost of $1,000,000 in 2010 that it held onto even after Husband asserts the Company began experiencing a downturn.  In the summer of 2010, Husband spent $35,000 on a new Mercedes car to give his daughter as a high school graduation present.  In May 2010, Husband spend $16,000 to move plants from his mother's residence to his own residence.  The Company may have laid some employees off as a result of lower revenues, but Husband and the Company began hiring additional employees in April 2011.

Michael Measels is the executive vice president of information and solutions at the Company, and he testified that the Company pays for a portion of its employees' gym memberships and pays for personal trainers and masseuses to come to the office.  The Company owns a fleet of cars that it provides to certain of its employees.  It also owns a suite at the Titans stadium that costs $75,000 to $80,000 each year.  Mr. Measels testified that the Company is doing better since April 2011, and he anticipated revenues for the 2012 year to reach fourteen to fifteen million dollars.

Husband valued Wiser Company at $10,000,000 as of November 30, 2009, and at $8,050,000 as of October 15, 2011.  The Company's certified public accountant testified that Husband has a guaranteed payment from the Company in the amount of $192,000 each year.  A personal financial statement Husband submitted to a lender for the purpose

of receiving an insured loan indicated that as of January 17, 2012, Husband owned stock valued at $8.1 million and that listed his net worth at $6,412,776.13. Husband owns two residences. One was valued as of October 15, 2011, at $900,000 and the other has been appraised for $250,000. Evidence was introduced that Husband lives in one of the residences, but it is not clear if anyone occupies the other residence.

The trial court found that Husband showed "a substantial decrease in revenue and his income from April 14, 2011, until January 31, 2012," and that Husband's alimony payments for this eight and a half month period should be reduced to $5000 per month. Beginning January 31, 2012, however, the trial court found Husband has "substantial funds with which to continue the original alimony payments" of $10,000 per month.

Wife does not contest the limited reduction in alimony payments. Husband, however, contends the trial court abused its discretion in failing to order a further reduction in alimony from January 1, 2010, through the date the trial was completed.

The evidence showed Husband does not limit his spending even when he claims he does not have "income" to support his purchases or expenditures. Husband's intermingling of his and Wiser Company's finances make it close to impossible to determine Husband's true financial position. Based on the evidence presented at trial, we do not find the evidence preponderates against the trial court's finding that Husband has failed to show a substantial and material change in circumstances to justify a modification of his alimony obligation for the period from February 1, 2012, through the time in 2017 when Husband's alimony payments will cease, as originally ordered. Wife submitted her income and expense statement at trial, and Husband has not shown that her need for the alimony has changed since the Court of Appeals increased her monthly support to $10,000 in 2010.

C. Attorney's Fees

Husband next argues the trial court erred in determining the amount of attorneys' fees and costs Wife was entitled to recover from Husband.[6] The trial court awarded Wife a total of $178,778.22, which amount includes fees Wife incurred from her initial petition filed in 2007 to increase her alimony and child support, fees incurred from the appeal of the trial court's partial denial of her 2007 petition, and fees incurred from defending Husband's current petition to reduce alimony and child support.[7] Husband complains

---

[6]Wife is entitled to an award of her fees pursuant to Tenn. Code Ann. §§ 36-5-101 and 36-5-103(c). *Wiser*, 339 S.W.3d at 20; *see Evans v. Evans*, M2002-02947-COA-R3-CV, 2004 WL 1882586, at *15 (Tenn. Ct. App. Aug. 23, 2004) (explaining prevailing spouse is entitled to attorney's fees in post-divorce proceedings to increase or decrease alimony).

[7]The $178,778.22 award also includes prejudgment interest awarded pursuant to Tenn. Code Ann. § 47-14-123.

that Wife's attorney failed to include in his fee affidavits information about his experience or that his hourly rate was customary in the community, that his fees were reasonable and necessary, and that they were based on the complexity of the case.

An award of attorney's fees is "largely in the discretion of the trial court, and the appellate court will not interfere except upon a clear showing of abuse of that discretion." *Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995). A trial court abuses its discretion when it applies an incorrect legal standard, reaches a result that is not logical, decides a case based on an assessment of the evidence that is clearly erroneous, or relies on reasoning that results in an injustice to an interested party. *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). The Tennessee Supreme Court set forth guidelines in *Connors v. Connors*, 594 S.W.2d 672 (Tenn. 1980), for trial courts to follow in determining a reasonable attorney's fee to award. These factors include:

1. The time devoted to performing the legal service.

2. The time limitations imposed by the circumstances.

3. The novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly.

4. The fee customarily charged in the locality for similar legal services.

5. The amount involved and the results obtained.

6. The experience, reputation, and ability of the lawyer performing the legal service.

*Connors*, 594 S.W.2d at 676; *see Kline v. Eyrich*, 69 S.W.3d 197, 209 (Tenn. 2002) (trial courts are to consider guidelines outlined in *Connors* to determine reasonable attorney's fee); *see also* TENN. SUP. CT. R. 8, RULE OF PROFESSIONAL CONDUCT 1.5 (a)-(10) (listing factors to consider when determining reasonableness of attorney's fee, similar to *Connor* factors).

The trial court held a hearing on April 29, 2011, to determine the reasonable attorney's fees to award Wife pursuant to the remand by the Court of Appeals in 2010. *See Wiser*, 339 S.W.3d at 22. Wife's attorney submitted himself to questioning by Husband's attorney at that hearing to determine the reasonableness of the fees he was requesting, but Husband's attorney waived his right to ask him any questions.[8] The trial

---

[8]Wife's attorney stated the following at the hearing:

court stated in its decision that it conducted "a thorough review of statements submitted by Wife's attorney." In fact, the trial court separated from Wife's attorney's itemization of legal services numerous items it deemed discretionary costs rather than attorney's fees, and it reduced numerous line items, either based on the time spent or the hourly rate charged. The court also closely inspected the discretionary costs submitted by Wife's attorney and reduced the total of these requested costs by an appreciable amount.

The trial court is charged with determining whether a requested fee is reasonable. Husband points to no law suggesting an attorney requesting fees is required to specify in his affidavit that his hourly rate is reasonable or customary in the community or that his fee is justified by the complexity of a case. In *Chaffin v. Ellis*, 211 S.W.3d 264 (Tenn. Ct. App. 2006), the father argued that the fee affidavit submitted by the mother's attorney was deficient because it failed to include sufficient details of the work performed. *Id.* at 291. The trial court awarded the mother 60% of the fees she requested, and the award was affirmed on appeal. *Id.* The Court of Appeals explained:

> Under Tennessee caselaw, "a trial judge may fix the fees of lawyers in causes pending or which have been determined by the court, with or without expert testimony of lawyers and with or without a prima facie showing by plaintiffs of what a reasonable fee would be." *Cain v. Cain*, W2003-00563-COA-R3-CV, 2004 WL 404489, at *2 (Tenn. Ct. App. Mar. 3, 2004) (quoting *Wilson Mgmt. Co. v. Star Distribs. Co.*, 745 S.W.2d 870, 873 (Tenn. 1988)). A trial court may judge the value of the fees by having participated in the proceedings before it. *Richards v. Richards*, M2003-02449-COA-R3-CV, 2005 WL 396373, at *15 (Tenn. Ct. App. Feb. 17, 2005). Thus, the deficiency in the proof for lack of adequate description of the services provided, standing alone, is not an adequate basis on which to find that a trial court abused its discretion in awarding the fees claimed.

*Id.* As was the case in *Chaffin*, the trial court that awarded Wife her attorney's fees participated in the proceedings and was able to judge the value of the fees requested.

Husband also argues Wife is not entitled to an award of her fees because she did not prevail on all issues. The case at bar centered on Husband's petition to reduce or terminate his alimony and child support obligations. Although the trial court provided some relief to Husband by reducing his alimony for a number of months, the court did not reduce Husband's alimony permanently or allow him to reduce his child support obligation. Wife is the prevailing party overall with regard to those issues. Wife did file

> We are here today, in my opinion, only to implement the remand from the Court of Appeals and for Your Honor to make a determination as relates to reasonable attorney's fees related to the increase and also the appeal. Certainly, I will submit myself to questioning as relates to the reasonableness of the fees requested if Mr. Hornsby so desires or if your Honor so desires.

a petition for contempt and a petition to increase child support, both of which were denied. However, a vast majority of the trial was spent on the issues Husband raised in his petition, and Husband points to nothing in the fee request Mother's attorney filed indicating Mother is seeking an award of fees relating to either of the issues she raised but did not prevail upon.

In response to questions regarding her ability to pay her attorney's fees, Wife testified that she does not have assets from which she can pay these fees. Husband has failed to show that the trial court abused its discretion in awarding Wife the attorney's fees and discretionary costs in the amounts set forth in the trial court's Final Order.[9] Concluding the trial court properly exercised its discretion in determining the reasonable fees and costs to which Wife is entitled, we affirm the trial court's award of fees and costs to Wife.

Wife seeks an award of the fees she has incurred on appeal. We have discretion to award these fees pursuant to Tenn. Code Ann. § 36-5-103(c). *Pippin v. Pippin*, 277 S.W.3d 398, 407 (Tenn. Ct. App. 2008). We hereby exercise our discretion to award Wife the reasonable attorney's fees and costs she incurred in defending Husband's appeal. We remand this case to the trial court for a determination of the appropriate amount of fees and costs that should be awarded to Wife.

III. CONCLUSION

For the reasons stated above, we affirm the trial court's judgment in all respects. This case is remanded to the trial court for a determination of the reasonable attorney's fees and costs Wife incurred in defending Husband's appeal, which amount the trial court shall direct Husband to pay to Wife forthwith. Appropriate prejudgment and post-judgment interest should be ordered. Costs shall be taxed to the appellant, Cyrus W. Wiser, Jr., for which execution shall issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[9]Husband argues Wife filed her request for discretionary costs outside the time period required by Rule 40 of the Tennessee Rules of Appellate Procedure. Husband objected to Wife's request for discretionary costs in March 2013, but he failed to raise timeliness as a basis for his objection. "Issues raised for the first time on appeal are waived." *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 670 (Tenn. 2013). Thus, we will not address Husband's argument on this point.