**Max Eugene RICHARDSON, Plaintiff-Appellee,**

v.

**Nancy Ruth RICHARDSON, Defendant-Appellant.**

Court of Appeals of Tennessee, Eastern Section.

Feb. 22, 1980.

Certiorari Denied by Supreme Court April 21, 1980.

Gary R. Wade, Sevierville, for defendant-appellant.

Jerry K. Galyon, Sevierville, for plaintiff-appellee.

## OPINION

GODDARD, Judge.

Nancy Ruth Richardson, Defendant-Appellee, Cross-Appellee, appeals a judgment of the Circuit Court for Sevier County which, upon petition of her former husband, Max Eugene Richardson, Plaintiff-Appellee, Cross-Appellant, terminated alimony payments. These payments, which were set out in a property settlement agreement, were incorporated in the decree granting her husband a divorce on the ground of irreconcilable differences.

Both parties appeal, Mrs. Richardson insisting that the Court was in error in terminating the alimony payments, and Mr. Richardson that the Court was in error in failing: (1) to reduce child support payments, (2) to determine whether the Plaintiff has a duty to provide educational expenses for his children after they reach their majority, or at least to establish guidelines with regard to these obligations, and (3) to terminate alimony payments on the additional grounds that the alimony statute is unconstitutional under the Equal Protection Clause of the Federal Constitution, and that under the provisions of T.C.A. 36–826 alimony may not be awarded when the husband is granted a divorce.

At the time of the parties' divorce, in December 1977, they had been married some 18½ years and were the parents of two daughters, ages 15 and 16. Mr. Richardson operated a jewelry store in Gatlinburg, which was purchased from his father after the marriage of the parties. Mrs. Richardson also worked at the store. As above noted, the divorce was granted to Mr. Richardson on the grounds of irreconcilable differences, and the property settlement agreement, which was approved by the Court, provided in pertinent part the following:

*To the Wife*:

(1) Home, with the husband to pay the outstanding indebtedness

(2) 1977 Cadillac automobile, with the husband to pay the indebtedness

(3) Boat and Motor

(4) Household furnishings

*To the Husband*:

(1) Interest of the wife in the jewelry store, with the husband to assume the indebtedness as to the business

(2) 1976 Cadillac automobile, with the husband to assume any indebtedness

(3) Float Boat, with the husband to assume any indebtedness

The evidence is conflicting as to the value of the jewelry store and the proper debts to be assessed against it. According to Mrs. Richardson's calculations, the net value of property she received by the settlement was $70,200, while the net value received by Mr. Richardson was from $108,000 to $208,000, depending on the value of the jewelry store which in his testimony he placed at $100,000 and she at $200,000. Mr. Richardson's calculations and evaluations, however, are substantially different, and according to him the net value received by her was from $71,200 to $78,200, and by him less than $20,000. The major discrepancy in the evaluation of his assets is that in his brief he valued the jewelry store at inventory ($78,-500) and contends that the jewelry store owes debts of some $63,300.

The agreement also made the following provisions relative to alimony, child support and the children's college education:

## V

The said Party of the first part will pay to the Party of the Second Part the sum of Twelve Thousand Dollars ($12,000.00) per year as child support and alimony. Said child support and alimony shall be paid as follows:

(a) Two Hundred Fifty Dollars ($250.00) per month as child support for Robin Ruth Richardson until she reaches the age of 18 years.

(b) Two Hundred Fifty Dollars ($250.00) per month as child support for Cindy Jean Richardson until she reaches the age of 18 years.

The balance shall constitute alimony to the Party of the Second Part until the children reach the age of 18 years. After the children reach the age of 18 years, the party of the second part shall continue to receive the $12,000.00 per year as alimony until such time as she should remarry. All alimony payments shall cease and terminate in the event the Party of the Second Part remarries.

Provided however that the monthly payments of child support and alimony shall be $800.00 per month to be paid at the end of each month commencing at the end of September, 1977 and at the end of every month thereafter with a lump sum payment of $800.00 to be paid by December 15, 1977 and a lump sum payment of $2,400.00 to be paid by the 15th of December of each year thereafter until party of the second part should remarry.

## VI

That the party of the first part shall pay for the college education through the B.S. Degree or equivalent level, of the parties minor children to include all costs of books, school supplies, tuitional expenses, room and board, participation in sorority activities and provide medical and hospitalization insurance coverage on the children during their college career. Provided however, that the college education be completed by the time the children reach the age of 24 years.

Party of the First Part will transfer all right title and interest in two (2) lots located in Lakeland Hills Subdivision of record in WD Book 241, page 67, Sevier County Register's Office, to the Party of the Second Part unencumbered.

Since the divorce the husband's income, according to his tax returns, has declined. For the year 1977 he showed a net income from the business of just over $11,000, and for the year 1978, just over $5000. The

wife, although suffering from back problems and a nervous condition, was able to work during the tourist season at a Gatlinburg candy store, where she earned some $2000 for 1978. She also attempted to sell boats, but this venture proved unrewarding. Beginning about August of 1978, she established a liaison with a man who lived in her house with her and her children from about September to December. Although the proof is conflicting, it does not appear that he was living with her at the time of trial.

There is, however, proof to the effect that he has from time to time contributed to the living expenses of Mrs. Richardson and the children by buying groceries on occasions, as well as lending one of the daughters. his automobile to use.

The Chancellor found that the alimony award should be terminated for three reasons: first, inability of the husband to pay; second, misconduct on the part of the wife; and third, ability of the wife to secure employment and support herself.

As to the first ground, we agree with the Court that according to Mr. Richardson's income tax returns he would be unable to pay $12,000 per year as alimony and child support and to support himself and his present wife without encroaching upon his capital. However, we do note that for the year 1977, the very year which he had agreed to make the $12,000 per year payments, his tax return showed an income of less than that amount. While it is true that there is a depreciation figure in both the 1977 and 1978 returns of some $4000, which would add that much actual cash to the net income figure, nevertheless, it is obvious that he would be unable to make the payments on his income alone.

■ We do believe, however, that he can make some payments toward alimony, and are not in sympathy with a husband who promises more in the way of alimony than he can pay to induce his wife to permit him to obtain a divorce, and shortly after the divorce becomes final seeks to terminate the agreed payments.

■ Sofar as we have been able to determine, only one Tennessee case, Sloan v. Cox, 5 Tenn. 75 (1817), addresses the second point raised, misconduct of a spouse. Although the case turned on statutory construction, we think it is instructive as demonstrating court philosophy even at that early date. In Sloan the personal representative of the deceased husband defended a levy of execution for alimony payments upon the ground of the ex-wife's adultery. The Supreme Court found the defense without merit, holding that alimony in bed and board divorces could only be terminated for reasons set out in the statute,[1] which provided that alimony would "continue until a reconciliation takes place or the husband shall by his petition offer to cohabitate with her again, and use[2] her as a good husband ought to do." There is a helpful annotation on the subject found in 6 A.L.R.2d at page 859, and we are inclined to agree with the cases cited therein which hold that subsequent misconduct is insufficient reason to terminate alimony payments. In this regard, without condoning to any degree the misconduct of the wife, we also agree with the Supreme Court of Nebraska which, in Bowman v. Bowman, 163 Neb. 336, 79 N.W.2d 554, 561 (1956), made the following observation:

> It is not the function of the court in this civil proceeding to attempt to serve as an agency for the moral regeneration of appellant. The doctrine applicable and controlling under the circumstances of this case is that when an allowance has been made to a wife, neither she nor her husband has a right to complain of the subsequent conduct of the other. The failure of the wife to lead a chaste life affords no ground for depriving her of alimony as previously fixed and awarded nor does the failure of the husband to conduct himself properly afford a legal reason for increasing the award made to the wife.

---

1. Chapter 19 of the Acts of 1794, which was repealed by chapter 26 of the Acts of 1836.

2. The Legislature does not purport to define "use," but the Sloan Court interpreted it to mean "treat."

After a final divorce the wife has no duty to her former husband, the non-performance of which will forfeit her right to the alimony granted her.

It does not necessarily follow that her associations with another man are not relevant, and any contributions made to her support by him may be taken into consideration in determining whether alimony payments should be adjusted.

As to the third point, we agree with the Chancellor that Mrs. Richardson is in a position to secure some gainful employment, although—because she doesn't have any special training and does not enjoy the best of health—her earning capacity is limited.

While we would be disinclined to think that any of the above reasons taken alone would be sufficient to terminate alimony, we are persuaded that in combination they present a case that requires a reduction in the alimony heretofore ordered. Consequently, upon the whole record we conclude that reducing the monthly alimony from $500 per month to $250 would be just and equitable under all the facts of this case, and such a reduction is ordered effective as of May 9, 1979, the date of the judgment below.

■ As to the issues raised by Mr. Richardson, we agree with the Trial Court that *Orr v. Orr*, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979), is inapplicable. In *Orr* the Supreme Court strongly suggests that should the Legislature of Alabama enact a provision granting husbands as well as wives the right to alimony—a circumstance which has occurred in Tennessee [3]—the Court would give the Act retrospective effect, at least as to equal protection considerations, and deny Mr. Orr relief. Additionally, the Court also suggests that it would not have entertained the petition had either counsel for Mrs. Orr or the Alabama courts questioned the timeliness of Mr. Orr's attack. In the present case we agree with the Trial Court that Mr. Richardson's objection—over one year after the judgment granting a divorce and alimony—comes too late.

■ We also agree with the following observation of the Trial Court in his memorandum opinion regarding Mr. Richardson's contentions concerning his children's college education:

The plaintiff next insists that he is entitled to have the Court declare and define his duties and obligations for post-majority support and education for his children arising from the hereinbefore quoted terms of the Property Settlement Agreement, and incorporated in the divorce decree. The children are at this time minors, 16 and 17 years of age, respectively, and still in secondary schools. The plaintiff cannot be called on for compliance with the terms of this provision unless and until one or more of the children qualify for and enter upon a college education, and until such time, and some demand therefor made upon the plaintiff, there is no justiciable issue before the Court for determination. The Court will not render advisory opinions or consider matters which may or may not occur in the future.

As to the reduction in child support payments, we concur with the Chancellor that there is no justification under this record for such, and find no abuse of discretion in his refusing this relief.

In conclusion, we point out that we have not overlooked the unreported case from the Supreme Court of *Brewer v. Brewer*, filed at Nashville October 22, 1979, wherein the Court held that under the circumstances of that case the award to the wife was not conventional alimony, but instead an integral part of the settlement of property rights not subject to modification in the manner attempted.

We think that *Brewer* is distinguishable because Mr. Brewer received practically all of the assets of the parties which the Court found was in exchange for the protection of the wife through support payments. In the case at bar the wife received substantial assets, even more than did the husband

3. Chapter 339, Public Acts of 1979.

according to his lawyer's calculations. In any event, we are of the opinion that the facts of this case do not fit the rule of *Brewer*, and it is not controlling. .

For the foregoing reasons the judgment of the Trial Court, except as modified herein, is affirmed and the cause remanded for enforcement of the modified order. The costs of appeal are adjudged one-half to Mrs. Richardson and her sureties and one-half against Mr. Richardson and his sureties.

PARROTT, P. J. (E. S.), and SANDERS, J., concur.