IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 5, 2020 Session

**SUSAN HEMBREE (SCHUMACHER) DELUCA
v. KERRY JAMES SCHUMACHER**

**Appeal from the Circuit Court for Davidson County
No. 00D-2918      Philip E. Smith, Judge**

_____

**No. M2019-00601-COA-R3-CV**

_____

A husband and wife executed a marital dissolution agreement ("MDA") providing that the husband would pay the wife alimony in futuro even if she remarried. Following the wife's remarriage, the husband sought to have his alimony obligation terminated pursuant to Tenn. Code Ann. § 36-5-121(f)(3), which provides that an alimony in futuro award "shall terminate automatically and unconditionally upon the death or remarriage of the recipient." The trial court terminated the husband's alimony obligation, and the wife appealed. We reverse the trial court's judgment because the parties voluntarily agreed to terms outside of the statute, and their contract is enforceable as written.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Karla C. Miller, Nashville, Tennessee, for the appellant, Susan Hembree (Schumacher) DeLuca.

Helen Sfikas Rogers, Lawrence James Kamm, and Laura S. Blum, Nashville, Tennessee, for the appellee, Kerry James Schumacher.

**OPINION**

I. FACTUAL AND PROCEDURAL BACKGROUND

Susan Hembree (Schumacher) DeLuca ("Wife") and Kerry James Schumacher ("Husband") were divorced in September 2008 following a marriage of over thirty years. The parties executed an MDA in August 2008 that specified, among other things, the

amount and terms of the alimony Husband would pay to Wife. The trial court found that the MDA provided for "a fair and equitable settlement of the property rights between the parties" and entered an order approving all provisions of the MDA and making it the judgment of the court.

The MDA included a section titled "Spousal Support" that provided, in relevant part, as follows:

Husband agrees to pay alimony *as long as the wife shall live* in an amount equal to 30% of his gross income capped at an annual income of $500,000. This $500,000 cap shall be indexed to the Consumer Price Index for the South-All Items, which as [of] the date of this agreement is 335.257 (1997=100). Gross income shall be defined as all income on which Medicare taxes shall be paid plus any pension payments made on the behalf of the Husband as a fringe benefit that are not currently taxed by Medicare. Additionally, gross income shall include any payments to which the Husband is entitled and has otherwise been deferred under IRC Section 457.

. . . .

In addition to the alimony stipulated in the above, Husband agrees to pay Wife rehabilitative alimony of $3100.00 per month for five years, commencing 30 days after this agreement is signed.

Husband's obligation to pay alimony shall cease upon the death of Wife. Should Husband predecease wife, his estate shall pay the support obligation as long as Wife is alive. Given that the life expectancy of Husband is approximately 3.75 years less than that of the Wife, Husband agrees to maintain an un-encumbered, $1,000,000 life insurance policy, with Husband as the insured, making Wife the owner and beneficiary, and to fund the obligation payable at the time of his death. Additionally, *the parties agree, that should the Wife remarry or cohabit more than 90 days with a romantic partner, and should the Wife's new Husband or romantic partner have any gross income, determined in the same manner as that of the Husband's, the Husband's obligation to pay alimony shall be reduced dollar-for-dollar, based on the amount of the gross income of Wife's new Husband or romantic partner, EXCEPT, in no case shall alimony be reduced any lower than the amount of funds needed to pay the first and second mortgages on Wife's residence based on the total amount of the mortgages ($525,730.70) in existence as of the date of the signing of this agreement.*

(Emphasis added.)

Wife remarried on October 17, 2015, and Husband learned of the remarriage shortly thereafter. Husband initially stopped paying alimony to Wife once he found out that she had remarried, but he resumed sending Wife alimony payments after a couple of months. Husband eventually sought legal counsel to determine whether he was required to continue paying alimony to Wife in light of her married status, and on August 1, 2016, Husband filed a petition seeking to terminate his alimony obligation. By the time of the hearing, the parties agreed Husband had paid a total of $85,200 to Wife since her remarriage. Husband sought a judgment in that amount, which he termed an overpayment of alimony. He also asked the court to reduce or eliminate his obligation to continue paying premiums on life insurance policies that were transferred to Wife when the parties were divorced. Husband asserted that the policies were transferred to Wife to insure his alimony obligation and were not marital assets that the parties divided as part of the property settlement.

Husband filed a motion for summary judgment, and the trial court held a hearing to consider the motion on October 28, 2016. The court issued a memorandum and order on November 23, 2016, in which it ruled that Husband's obligation to pay Wife alimony terminated as a matter of law upon her remarriage, regardless of the terms set forth in the MDA. The court relied for its ruling on Tenn. Code Ann. § 36-5-121(f)(3), which states in pertinent part: "An award for alimony in futuro shall terminate automatically and unconditionally upon the death or remarriage of the recipient." The trial court concluded that the alimony Husband was paying to Wife was properly classified as alimony in futuro and summarized its ruling thusly:

> [T]he Court finds that the MDA in the present case merged into the final decree of divorce, and as a result, this Court retained its continuing jurisdiction to modify the alimony in futuro obligation pursuant to Tenn. Code Ann. § 36-5-121(f)(2)(A). Furthermore, because Tenn. Code Ann. § 36-5-121(f)(3) provides for the automatic and unconditional termination of an alimony in futuro award upon the remarriage of the recipient, the Court finds that it must follow the statute as written by the General Assembly and terminate the Petitioner's alimony obligation.

In a separate ruling, following an evidentiary hearing, the trial court awarded Husband a portion of the alimony he paid Wife following her remarriage but denied Husband's request that he be permitted to stop paying the premiums on the life insurance policies that were transferred to Wife when the parties were divorced. Both parties requested an award of their attorney's fees. The trial court awarded Wife the fees attributable to her defense of Husband's request to be relieved from paying the life insurance premiums and denied Husband's request for fees.

Wife appeals the trial court's decision granting Husband's motion for summary judgment and terminating Husband's alimony obligation. She contends that the alimony provisions of the MDA did not merge into the final decree but retained their contractual nature, with the result that they should be enforced as written. She requests an award of her attorney's fees incurred at trial and on appeal. Husband appeals the trial court's decision that the life insurance premium payments were partially in the nature of a property settlement as well as its award to Wife of a portion of her attorney's fees.

## II. STANDARD OF REVIEW

The trial court granted Husband summary judgment on the issue whether he was required to continue paying Wife alimony once she was remarried. This case involves the interpretation of the statute addressing alimony, Tenn. Code Ann. § 36-5-121. "The tasks of statutory construction and applying a statute to a particular set of facts involve questions of law rather than questions of fact," and "appellate courts must review a trial court's construction of a statute or application of a statute to a particular set of facts de novo without a presumption of correctness." *Midwestern Gas Transmission Co. v. Lassiter*, No. M2005-00829-COA-R3-CV, 2006 WL 464119, at *5 (Tenn. Ct. App. Feb. 24, 2006); *see also Sneed v. City of Red Bank*, 459 S.W.3d 17, 22 (Tenn. 2014) (stating statutory interpretation is an issue of law that appellate courts review de novo). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, affording the trial court's decision no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015).

## III. ANALYSIS

### A. Alimony Payments

An MDA is a contract that "is subject to the rules governing construction of contracts." *Eberbach v. Eberbach*, 535 S.W.3d 467, 474 (Tenn. 2017). If a trial court approves an MDA, it becomes incorporated into the decree of divorce. *Eberbach*, 535 S.W.3d at 474. The trial court in this case filed the parties' final decree of divorce on September 17, 2008, and the court wrote that "all provisions of said Marital Dissolution Agreement are hereby approved and made the judgment of this Court as attached."

Wife does not dispute the trial court's determination that the type of spousal support Husband agreed to pay her was properly classified as alimony in futuro. Pursuant to Tenn. Code Ann. § 36-5-121(f)(1), "[a]limony in futuro, also known as periodic alimony, is a payment of support and maintenance on a long term basis or until

death or remarriage of the recipient." The section of the statute focusing on alimony in futuro provides, in pertinent part, that:

> (2)(A) An award of alimony in futuro shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances.
>
> (B) In all cases where a person is receiving alimony in futuro and the alimony recipient lives with a third person, a rebuttable presumption is raised that:
>
>> (i) The third person is contributing to the support of the alimony recipient and the alimony recipient does not need the amount of support previously awarded, and the court should suspend all or part of the alimony obligation of the former spouse; or
>>
>> (ii) The third person is receiving support from the alimony recipient and the alimony recipient does not need the amount of alimony previously awarded and the court should suspend all or part of the alimony obligation of the former spouse.
>
> (3) *An award for alimony in futuro shall terminate automatically and unconditionally upon the death or remarriage of the recipient.* The recipient shall notify the obligor immediately upon the recipient's remarriage. Failure of the recipient to timely give notice of the remarriage shall allow the obligor to recover all amounts paid as alimony in futuro to the recipient after the recipient's marriage. Alimony in futuro shall also terminate upon the death of the payor, unless otherwise specifically stated.

Tenn. Code Ann. § 36-5-121(f) (emphasis added).

Husband relies on section (f)(3) of the statute to support his argument that Wife's alimony "was subject to automatic and unconditional termination upon her remarriage" regardless of the terms of the MDA. Husband cites the merger doctrine, which dates back to 1946 in Tennessee, to support his position. *See Osborne v. Osborne*, 197 S.W.2d 234, 236 (Tenn. Ct. App. 1946). In the *Osborne* case, the Court of Appeals wrote that when divorcing parties agree to the terms for alimony and child support, the agreements "are not absolute and binding when the court retains jurisdiction for their modification or the statute law of the state provides that such decrees remain open and subject to modification." *Id.* (citing 27 C.J.S., *Divorce*, § 234, p. 961). The *Osborne* court continued:

It is the theory of the majority of the courts that an agreement of the parties becomes "merged into the decree and thereby loses its contractual nature at least to the extent that the court has the power to modify the decree when changed circumstances so justify."

*Id.* (quoting *Worthington v. Worthington*, 139 So. 334, 335 (Ala. 1932)). Since that time, the courts of Tennessee have found that when divorcing parties agree about their legal duty of child support or alimony, the parties' agreement becomes merged into the court's decree once it is approved, and it "loses its contractual nature." *Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975); *see also Karsonovich v. Kempe*, No. M2017-01052-COA-R3-CV, 2018 WL 1091735, at *3 (Tenn. Ct. App. Feb. 27, 2018) ("Once the MDA is incorporated, issues governed by statute, like alimony and child support, 'lose their contractual nature and become a judgment of the court.'") (quoting *Eberbach*, 535 S.W.3d at 474). The *Penland* Court explained the reason for the rule:

[I]t is clear that the reason for stripping the agreement of the parties of its contractual nature is the continuing statutory power of the Court to modify its terms when changed circumstances justify. It follows, and we so hold, that only that portion of a property settlement agreement between husband and wife dealing with the legal duty of child support, or alimony over which the court has continuing statutory power to modify, loses its contractual nature when merged into a decree for divorce.

*Penland*, 521 S.W.2d at 224; *see also Beck v. Beck*, No. W2011-01806-COA-R3-CV, 2012 WL 1656228, at *4-5 (Tenn. Ct. App. May 11, 2012). The issue in *Penland* was the enforceability of a provision of the parties' agreement in which the husband agreed to "assume liability for all future educational expenses of the children beyond high school level." *Penland*, 521 S.W.2d at 223. The Court concluded that this provision was enforceable and retained its contractual nature despite the fact that it was incorporated into the final decree of divorce because it fell "outside the scope of the legal duty of support during minority." *Id.* at 224-25.

Wife argues that the terms of the MDA should be enforced despite the language of Tenn. Code Ann. § 36-5-121(f)(3) because the parties expressly agreed that Husband would continue to pay Wife alimony even if she remarried. Wife relies on two different provisions of § 36-5-121 to support her position. The first provision Wife relies on is subsection (a), which states:

In any action for divorce, legal separation or separate maintenance, the court may award alimony to be paid by one spouse to or for the benefit of the other, or out of either spouse's property, according to the nature of the case and the circumstances of the parties. The court may fix some definite amount or amounts to be paid in monthly, semimonthly or weekly

- 6 -

installments, or otherwise, as the circumstances may warrant. Such award, if not paid, may be enforced by any appropriate process of the court having jurisdiction including levy of execution. Further, the order or decree shall remain in the court's jurisdiction and control, and, upon application of either party, the court may award an increase or decrease or other modification of the award based upon a showing of a substantial and material change of circumstances; *provided, that the award is subject to modification by the court based on the type of alimony awarded, the terms of the court's decree or the terms of the parties' agreement.*

Tenn. Code Ann. § 36-5-121(a) (emphasis added). The other provision Wife relies on is what is currently subsection (n), but at the time of the parties' divorce was subsection (m):

Nothing in this section shall be construed to prevent the affirmation, ratification and incorporation in a decree of an agreement between the parties as to support and maintenance of a party.

Tenn. Code Ann. § 36-5-121(m) (2008).

Recognizing the "tension between the enforceability of a valid contract and the court's continuing authority to modify alimony awards," *Winne v. Winne*, No. E2018-01050-COA-R3-CV, 2019 WL 5606928, at *2 (Tenn. Ct. App. Oct. 30, 2019), we have held that trial courts do not retain jurisdiction to modify alimony in cases where the divorcing parties have specified in their MDAs that an alimony award is not modifiable. *See, e.g., Karsonovich*, 2018 WL 1091735, at *5 ("If a divorcing party wishes to be able to modify alimony, that party should avoid including language in the MDA stating the alimony is non-modifiable."); *Vick v. Hicks*, No. W2013-02672-COA-R3-CV, 2014 WL 6333965, at *2-4 (Tenn. Ct. App. Nov. 17, 2014) (denying husband's petition to terminate transitional alimony upon wife's remarriage due to non-modification language of MDA); *cf. Winne*, 2019 WL 5606928, at *3 (holding alimony award was modifiable where parties did not expressly state in MDA that alimony award was not modifiable). The reason for the courts' willingness to enforce these agreements is that "[p]arties should be free to obligate themselves by agreement beyond what the courts could order them to do as a matter of law." *Holt v. Holt*, 751 S.W.2d 426, 428 (Tenn. Ct. App. 1988).[1]

---

[1] In *Holt*, the Court of Appeals affirmed the trial court's denial of the payor's request to be relieved from his promise to pay the recipient $80,000 as alimony in solido over a period of ten years in addition to ten percent of the payor's gross income for five years after the final payment of alimony in solido was made. *Holt*, 751 S.W.2d at 427-28. The payor argued that the alimony provisions were void because they violated public policy, and the court did not address the modification or termination provisions of Tenn. Code Ann. § 36-5-121. *Id.*

In *Vick v. Hicks*, the husband agreed in the parties' MDA to pay the wife transitional alimony for a period of sixty months. *Vick*, 2014 WL 6333965, at \*2. Their MDA stated that "[t]he alimony shall be not modifiable by either party." *Id.* The wife remarried before the end of the sixty-month period, and the husband filed a petition to terminate his alimony obligation. *Id.* at \*1. The trial court granted the wife's motion to dismiss the petition, and the husband appealed. *Id.* Similar to Husband's contention in the case at bar, the husband in *Vick* argued that the alimony statute gives the court "continuing statutory authority to modify his alimony obligation" irrespective of the terms of the MDA, and the wife's remarriage gave him the right to seek relief under the statute. *Id.* at \*3. The Court of Appeals disagreed:

> Undoubtedly, transitional alimony is generally subject to modification post-divorce if one of the contingencies in Tennessee Code Annotated § 36-5-121(g)(2) is established. Trial courts do possess such authority, as Husband has argued, as a matter of statute. *See* Tenn. Code Ann. § 36-5-121(g)(2) (2014). When, however, parties expressly agree in a marital dissolution agreement that a transitional alimony obligation shall not be modifiable, such an agreement should be deemed to have force. The alimony statutes are not applicable where the parties agree in a marital dissolution agreement to terms different from those set out in the statutes. *See Honeycutt v. Honeycutt*, 152 S.W.3d 556, 563 n.5 (Tenn. Ct. App. 2003); *Myrick v. Myrick*, No. M2013-01513-COA-R3-CV, 2014 WL 2841080, at \*4-6 (Tenn. Ct. App. June 19, 2014). Thus, notwithstanding whatever potential relief might otherwise be available generally as a matter of statute, the parties' agreement should take precedence. "Parties should be free to obligate themselves by agreement beyond what the courts could order them to do as a matter of law." *Holt v. Holt*, 751 S.W.2d 426, 428 (Tenn. Ct. App. 1988) (citation omitted). Moreover, the alimony statute specifically contemplates that divorcing parties, will at times, reach their own agreements as to support payments. *See* Tenn. Code Ann. § 36-5-121(n) (2014) (stating that "[n]othing in this section shall be construed to prevent the affirmation, ratification and incorporation in a decree of an agreement between the parties as to support and maintenance of a party"). In cases such as this one where the parties plainly state that the agreed-upon transitional alimony is nonmodifiable, courts should hold the parties to their agreement.

*Id.* at \*4 (footnotes omitted). The *Vick* court clarified in a footnote that the MDA's "plain language is controlling and makes the circumstances listed in Tenn. Code Ann. § 36-5-121(g)(2)(A-C) inapplicable." *Id.* at \*4 n.2; *see also Karsonovich*, 2018 WL 1091735, at \*4 (denying husband's petition to modify alimony payments where MDA stated alimony was "non-modifiable").

The MDA at issue here does not include the "non-modifiable" language discussed above. However, the parties' MDA addresses the possibility of Wife's remarriage and unambiguously states that Husband's alimony payments will continue notwithstanding her remarriage:

> [T]he parties agree, that should the Wife remarry or cohabit more than 90 days with a romantic partner, and should the Wife's new Husband or romantic partner have any gross income, determined in the same manner as that of the Husband's, the Husband's obligation to pay alimony shall be reduced dollar-for-dollar, based on the amount of the gross income of Wife's new Husband or romantic partner, EXCEPT, in no case shall alimony be reduced any lower than the amount of funds needed to pay the first and second mortgages on Wife's residence based on the total amount of the mortgages ($525,730.70) in existence as of the date of the signing of this agreement.

We have held that the alimony statute is not applicable to reduce or terminate an alimony obligation where the parties have agreed in an MDA to terms different from those contained in the statute even when the MDA does not state that it is not modifiable. For example, in *Honeycutt v. Honeycutt*, 152 S.W.3d 556, 558 (Tenn. Ct. App. 2003), the parties to an MDA agreed that the husband's alimony in futuro payments would cease if the wife cohabited with "a man not related to her." When the wife began living with an unrelated man, the husband sought to terminate his alimony payments. *Id.* at 558-59. The wife argued that she was still entitled to the alimony based on evidence she presented that she was not receiving financial support from the unrelated man. *Id.* at 563 n.5. She argued that her evidence rebutted the presumption currently contained in Tenn. Code Ann. § 36-5-121(f)(2)(B) that her alimony in futuro payments should be reduced or terminated if she lived with a third person who contributed to her support or who received support from her. *Id.*[2] The trial court agreed with the wife and denied the husband's request, and the husband appealed. *Id.* at 560-61. We reversed the trial court's judgment on appeal, holding that the statute did not apply to the facts of that case and that the terms of the MDA determined whether the husband should be relieved of his alimony obligation. *Id.* at 564. We wrote:

> [W]e find that the parties explicitly contracted for the termination of Husband's alimony obligations in the event Wife cohabits with an unrelated male, regardless of whether said male was providing Wife with financial assistance or support. We therefore find that the trial court erred in denying Husband's petition on the basis that he failed to introduce proof that Wife was receiving financial assistance from Barclay.

---

[2]The presumptions currently codified at Tenn. Code Ann. § 36-5-121(f)(2)(B) were codified at Tenn. Code Ann. § 36-5-101(a)(3)(A) and (B) for all relevant purposes in *Honeycutt*.

*Id.*

This court reached a similar result in *Myrick v. Myrick*, No. M2013-01513-COA-R3-CV, 2014 WL 2841080 (Tenn. Ct. App. June 19, 2014). In that case, the parties' MDA provided that the husband would pay the wife $2,000 in alimony "until the Wife dies or remarries, until the Husband dies, or until a third person not the Wife's child, moves into the Wife's residence." *Myrick*, 2014 WL 2841080, at *1. When the wife's mother moved into the wife's residence two years later, the husband filed a petition seeking to modify or terminate his alimony. *Id.* The trial court terminated the husband's alimony obligation based on the terms of the MDA, and the wife appealed. *Id.* at *2-3. The wife argued that the trial court erred by failing to apply the rebuttable presumption set forth in Tenn. Code Ann. § 36-5-121(f)(2)(B) before terminating her alimony. *Id.* at *4. This court affirmed the trial court's termination, stating, "The language used [in the MDA], *i.e.,* 'until a third person not the Wife's child, moves into the Wife's residence,' is not ambiguous, and the parties' choice to use this language in their agreement binds them to it." *Id.* at *6.

In *Cherqui v. Laor*, No. W2016-02502-COA-R3-CV, 2017 WL 4843185, at *4 (Tenn. Ct. App. Oct. 25, 2017), the Court of Appeals terminated a wife's alimony obligation when the husband failed to cooperate with the wife in obtaining a passport for the parties' child within the time period specified in the MDA and the permanent parenting plan referenced in the MDA. In their MDA, the wife agreed to pay the husband alimony in the amount of $5,000 per month for forty months. *Id.* at *1. The MDA provided: "The total monthly payments shall not be modifiable with the following exception: should Husband fail to comply with the provisions enumerated [in the MDA or parenting plan], Wife shall be immediately relieved of any further obligation to comply with this Alimony provision, beginning on Husband's date of non-compliance." *Id.* (emphasis omitted). Acknowledging that "'our courts are without power to make another and different contract from the one executed by the parties themselves,'" the *Cherqui* court held that the MDA relieved the wife of her alimony obligation due to the husband's failure to comply with the terms of the passport provision of the MDA and parenting plan. *Id.* at *4 (quoting *Eberbach*, 535 S.W.3d at 478).

When divorcing parties do not address the statutory conditions warranting a modification or termination of alimony in their MDA, we have held that the alimony obligation is subject to modification or termination according to the statute. For example, in *Winne v. Winne*, the husband agreed in the parties' MDA to pay the wife $2,200 each month as periodic alimony until either party's death, the wife's remarriage, or the passage of seven years. *Winne*, 2019 WL 5606928, at *3. The husband sought to modify or terminate his alimony obligation when the wife began living with a paramour in a house that the wife and her paramour owned. *Id.* at *1. The trial court modified the alimony obligation pursuant to Tenn. Code Ann. § 36-5-121(f)(2)(B), finding that the wife failed to rebut the statutory presumption that she no longer needed the full amount of alimony

because she was receiving support from a third party. *Id.* at *2. The wife appealed, arguing that the alimony provision of the MDA precluded the court from modifying the husband's alimony obligation for any reason not included in the MDA. *Id.* This court disagreed, noting that the MDA addressed only termination, not modification, and that "[s]ilence does not preclude modification." *Id.* at *3. We explained that "[t]he failure to include cohabitation in the list of events that terminate alimony does not evidence an intent to preclude modification of the award as authorized in the alimony statute." *Id.*; *see also Scherzer v. Scherzer*, No. M2017-00635-COA-R3-CV, 2018 WL 2371749, at *9 (Tenn. Ct. App. May 24, 2018) ("[A]lthough divorcing parties may contract to forego the statutory cohabitation exception to the nonmodifiability of transitional alimony provided in Tennessee Code Annotated § 36-5-121(g)(2), they need not include the exception in their MDA for the statute to apply.").

In *Bryan v. Leach*, 85 S.W.3d 136, 140 (Tenn. Ct. App. 2001), the divorcing parties entered into an MDA in which the father agreed to pay weekly child support "until each child is 22 years of age provided they are enrolled annually in and attending college full-time." In addition, the father agreed to pay for the children's private school tuition as well as "college expenses, including room, boarding, tuition, books and supplies, and other expenses related to college until each such child graduates from college." *Bryan*, 85 S.W.3d at 140. Both parties subsequently remarried, the father incurred additional expenses, and the mother's estate increased in value with the rise in the stock market. *Id.* at 142. The father requested that a portion of his child support payments be placed into a trust and sequestered from the mother's access because he believed the mother and her husband were using the payments for themselves rather than for the children's benefit. *Id.* at 142, 151. The trial court denied the father's request, and the father appealed. *Id.* at 142-43. This court affirmed the trial court's ruling as it related to the child support payments payable after the children reached eighteen years old. *Id.* at 151-52. We wrote:

> Any amounts of support that are not legally mandated but are imposed solely by the MDA, are not subject to revision by the court. That includes Father's agreement to pay support and college expenses beyond the date each child reaches the age of majority and graduates from high school.
>
> . . . .
>
> While it is generally true that a parent cannot be ordered by the courts to pay child support for an adult child, *Blackburn v. Blackburn*, 526 S.W.2d 463, 465 (Tenn. 1975); *Garey v. Garey*, 482 S.W.2d 133, 135 (Tenn. 1972), a party to a divorce may by agreement obligate himself or herself beyond the support duties imposed by law. Such a provision in an agreement constitutes "a contractual obligation outside the scope of the legal duty of support during minority and retains its contractual nature,

- 11 -

although incorporated in a final decree of divorce." *Penland v. Penland*, 521 S.W.2d 222, 224-25 (Tenn. 1975); *Blackburn*, 526 S.W.2d at 465. Any voluntarily assumed obligation exceeding the minimum child support required by statute is based on the parties' contract, enforceable as a contractual obligation, and controlled exclusively by the agreement. *Haas v. Haas*, No. 02A01-9604-CV-00073, 1997 WL 194852, at *3 (Tenn. Ct. App. Apr. 22, 1997) (no Tenn. R. App. R. 11 application filed). A parent's agreements to pay college expenses as well as to provide support beyond majority are contractual obligations for which the parent has no legal duty and which are not subject to modification by the courts. *Penland*, 521 S.W.2d at 224-25; *Dorris v. Dorris*, No. 01A01-9304-CV-00170, 1993 WL 380778, at *2 (Tenn. Ct. App. Sept. 29, 1993) (no Tenn. R. App. P. 11 application filed) (the trial court has no statutory power to award child support beyond the age of majority and no continuing power to modify such support).

*Id.* at 151. The *Bryan* court continued, stating "'The courts may not make a new contract for the parties who have spoken for themselves and may not relieve parties of the contractual obligations simply because these obligations later prove to be burdensome or unwise.'" *Id.* at 152 (quoting *Marshall v. Jackson & Jones Oils, Inc.*, 20 S.W.3d 678, 682 (Tenn. Ct. App. 1999) (citations omitted)).

Turning now to the facts of this case, we find that Husband's promise to pay Wife alimony even if she were to remarry is similar to the father's promise in *Bryan* to pay his children's expenses following their eighteenth birthdays. Just as a parent may agree to pay more child support than he or she may be statutorily required to pay, one spouse may agree to pay more alimony to the other spouse than he or she may be statutorily required to pay. By specifying in the MDA that Husband would pay Wife alimony even if she were to remarry, the parties essentially agreed that Tenn. Code Ann. § 36-5-121(f)(3) is not applicable to their MDA. An MDA is a contract, and parties are free to contract for provisions outside a statute's realm. *Karsonovich*, 2018 WL 1091735, at *5; *Vick*, 2014 WL 6333965, at *4; *see Scherzer*, 2018 WL 2371749, at *8 (stating that Tenn. Code Ann. § 36-5-121(n) "specifically contemplates that divorcing parties, will at times, reach their own agreements as to support payments"). As the Court of Appeals has noted, "our statutes permit and encourage divorcing parties to resolve by agreement their disputes regarding child custody and visitation, child support, spousal support, and the distribution of marital property." *Gibbs v. Gibbs*, No. E2015-01362-COA-R3-CV, 2016 WL 4697433, at *4 (Sept. 7, 2016) (citing Tenn. Code Ann. § 36-5-121(n), which was codified as subsection (m) at the time of Husband and Wife's divorce) (footnotes omitted).

As the Tennessee Supreme Court reminds us, "courts must interpret contracts so as to ascertain and give effect to the intent of the contracting parties consistent with legal

principles." *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn., Inc.*, 566 S.W.3d 671, 688 (Tenn. 2019). "[S]ubsequent modification of an agreement that retains its contractual nature would violate the Tennessee Constitution's prohibition against the impairment of contractual obligations." *Gibbs*, 2016 WL 4697433, at *4 (citing *Blackburn*, 526 S.W.2d at 465). We hold that Husband must comply with the terms of the MDA that he signed on August 8, 2014, and that he is not relieved of his obligation to pay Wife alimony because of her remarriage. The parties acknowledged in paragraph 21 of the MDA that "they believe this agreement to be fair, just, and reasonable [and] acknowledge that this agreement is the free and voluntary act of each other." In paragraph 22 each party represented that "he or she understands the meaning of the various provisions of this agreement, and that the text does set forth the agreement in the manner they had intended, and that they both had ample opportunity to have it reviewed by separate and independent counsel." In paragraph 26 the parties stated:

> It is further understood and agreed by and between the parties that this Marital Dissolution Agreement is entered into without any undue influence, fraud, coercion, or misrepresentation or for any reason not herein stated. Each party has had the opportunity to seek legal advice regarding the provisions in this Agreement and their legal effects, each party acknowledges that the agreement is fair and equitable and that it is being entered into voluntarily. The parties further acknowledge that they have had an opportunity to receive tax advice from a tax professional and did not receive or rely upon any tax advice from their respective attorneys.

On the day of the final divorce hearing, the trial judge asked Wife for Husband's telephone number. The judge then telephoned Husband and asked him to initial each page of the MDA and then fax the initialed pages back to the court. After Husband complied with this request, the trial judge wrote "Treat as original" and added her initials to the bottom of pages 3 and 4 of the MDA, which are the pages containing the section titled "SPOUSAL SUPPORT." This extra step by the trial judge reflects her effort to be sure Husband was aware of the terms of the MDA before incorporating it into the parties' decree of divorce.

## B. Public Policy

Husband contends that the MDA violates public policy, and is therefore unenforceable, because it contradicts Tenn. Code Ann. § 36-5-121(f)(3). The question whether a contract violates public policy is an issue of law which we review de novo, with no presumption of correctness. *Baugh v. Novak*, 340 S.W.3d 372, 381 (Tenn. 2011). The *Baugh* Court wrote that a court must act "with great delicacy" when invalidating a contract on the grounds of public policy because "'exercising the authority to declare contracts as void as against public policy is in tension with freedom of contract and the need to bind parties to their voluntary agreements,'" *id.* at 382 (quoting 21 Steven W.

Feldman, TENNESSEE PRACTICE: CONTRACT LAW AND PRACTICE § 7:3, at 732 (2006)), and "Tennessee law recognizes that '[t]he individual right of freedom of contract is a vital aspect of personal liberty,'" *id.* (quoting 21 Feldman, TENNESSEE PRACTICE: CONTRACT LAW AND PRACTICE § 7:3, at 728).

In *Karsonovich v. Kempe*, this court held that a husband's promise to pay "non-modifiable transitional alimony" for over thirteen years did not violate public policy despite the fact that the parties agreed to terms that exceeded the scope of the statute. 2018 WL 1091735, at *4-5. Citing Tenn. Code Ann. § 36-5-121(n), we wrote: "'[T]he alimony statute specifically contemplates that divorcing parties, will at times, reach their own agreements as to support payments.'" *Id.* at *5 (quoting *Vick*, 2014 WL 6333965, at *4). We further stated: "The parties contracted for elements outside the statute, and these deviations from the statute do not conflict with the policy set forth in Tenn. Code Ann. § 36-5-121 because the statute explicitly contemplates separate agreements." *Id.*

In *Holt v. Holt* we wrote that "'[p]ublic policy is practically synonymous with public good,'" *Holt*, 751 S.W.2d at 428 (quoting *Lazenby v. Universal Underwriters Ins. Co.*, 383 S.W.2d 1, 5 (Tenn. 1964)), and that "[a] contract may not be held invalid as against public policy unless some public detriment will probably result" or "the object of the contract has a tendency to injure the public," *id.* (citing *Twin City Pipeline Co. v. Harding Glass Co.*, 283 U.S. 353, 358 (1931), and *Nashville Ry. & Light Co. v. Lawson*, 229 S.W. 741, 743 (Tenn. 1921)). The *Holt* court held that the husband's agreement to pay the wife $80,000 as alimony in solido for ten years and then a percentage of his gross income as alimony in futuro for an additional five years did not violate the public policy of Tennessee. *Holt*, 751 S.W.2d at 428. As the court explained,

> The court did not order the appellant to pay alimony in solido; the court simply incorporated into its final decree the appellant's agreement to do so. Enforcement of the appellant's agreement would not establish any precedent contrary to our holding in *Aleshire* [*v. Aleshire*, 642 S.W.2d 729 (Tenn. Ct. App. 1981)]. Parties should be free to obligate themselves by agreement beyond what the courts could order them to do as a matter of law. *See generally Blackburn v. Blackburn*, 526 S.W.2d 463, 465 (Tenn. 1975). In such cases the courts are not sympathetic to a party who promises more than he can reasonably expect to pay in order to induce the other spouse to obtain a divorce and then seeks the termination of the agreed payments. *Richardson v. Richardson*, 598 S.W.2d 791, 794 (Tenn. App. 1980).

*Id.*

For the reasons set forth in *Baugh*, *Karsonovich*, and *Holt*, we hold that Husband's promise to pay Wife alimony in futuro after her remarriage does not violate the public

policy of Tennessee. No court is ordering Husband to pay Wife alimony in futuro following her remarriage; we are simply enforcing an agreement the parties voluntarily executed when they were divorced.

C. Insurance Policy Premiums

In light of our holding that Husband is obligated to comply with the express terms of the MDA and continue paying Wife alimony as set forth in the agreement, Husband's argument regarding the trial court's holding that he is not relieved from paying the premiums on the life insurance policies is pretermitted.

D. Attorney's Fees

Wife contends that she is entitled to an award of the attorney's fees she incurred at trial as well as on appeal. The MDA specifies that if either party is required to retain counsel to enforce or defend any provision of the agreement, "the prevailing party shall be entitled to recover all reasonable attorney's fees and costs of court incurred during such procedure." The trial court awarded Wife only a portion of the fees she incurred at trial based on its holding that Husband's alimony obligation terminated as a matter of law upon Wife's remarriage. Because we reverse the trial court's decision on this issue, Wife is entitled to recover all of the reasonable attorney's fees she incurred at trial and on appeal. On remand, the trial court shall determine the amount of Wife's reasonable attorney's fees incurred at trial and on appeal and shall enter an order awarding such amount to Wife.

IV. CONCLUSION

The judgment of the trial court terminating Husband's alimony obligation is reversed, and this matter is remanded for the determination of Wife's reasonable attorney's fees incurred at trial and on appeal. Costs of appeal shall be assessed against the appellee, Kerry James Schumacher, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE